Argued December 2, 1968, appeal dismissed February 13, 1969

GORTMAKER, *Appellant, v.* SEATON ET AL,
*Respondents.*

450 P. 2d 547

*Gary D. Gortmaker,* District Attorney, Salem, *pro se,* argued the cause and filed a brief for appellant.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Donald H. Coulter and D. F. Myrick, Grants Pass, filed a brief as amici curiae.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

This suit for declaratory relief was brought by the district attorney of Marion County, who claims to be in doubt about the meaning of various statutes and regulations designed by the Legislative Assembly to restrict the sale of lysergic acid diethylamide (LSD).[1] For reasons set forth below, the suit must be dismissed without a decision on the merits.

■ It is fundamental to appellate jurisprudence that courts do not sit "to decide abstract, hypothetical, or contingent questions * * * or to decide any constitutional question in advance of the necessity for its decision * * *." *Federation of Labor v. McAdory,* 325 US 450, 461, 65 S Ct 1384, 89 L Ed 1725 (1945), quoted with approval in *Thorpe v. Housing Authority,* 393 US 268, 89 S Ct 518, 21 L Ed2d 474 (1969).

We have examined the record made in the court below, and are satisfied that the district attorney is not a party whose rights, within the meaning of ORS 28.020, could be affected by judicial construction of the drug statutes.

The pleadings reveal agreement by the parties on every material question of fact, and reveal further that if a timely demurrer had been interposed, this case would have been dismissed in the trial court. *Hickey v. City of Portland,* 165 Or 594, 109 P2d 594 (1941). The only purpose of this admittedly "friendly" litigation is to obtain an advisory opinion, in advance of executive action, concerning the effect of certain penal statutes and regulations.

---

[1] The constitutionality of ORS 475.010 and 689.620 was upheld in State v. Sargent, 252 Or 579, 449 P2d 845 (1969).

■■ In order to have standing to maintain declaratory proceedings, one must allege a substantial interest in the matter in controversy. *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966). To satisfy the requirement of standing, the district attorney has alleged that if he actually prosecutes under the statutes as he understands them, he could be sued for damages, or if he erroneously fails to prosecute, he, himself, can be prosecuted by the state. Any district attorney in the state can make the same assertion about any criminal law on the books. These allegations are mere conclusions, highly speculative, hypothetical, and, as statements of law, open to serious question. We hold that the district attorney has stated no facts giving him standing to sue in this case. *Cummings Constr. v. School Dist. No. 9,* 242 Or 106, 408 P2d 80 (1965).

It can be argued that the public interest in the suppression of illegal drugs is so strong that the court should brush aside questions of standing and justiciable controversy and decide the case on its merits. There is some support for this proposition.

"* * * On this ground of wide public interest in the decision the courts have on occasion regarded as an actual controversy what might to some have appeared as an insufficiently hostile or concrete controversy and have actually decided what may have been denominated or may have been a moot case or request for advisory opinion * * *. The made case or test case is a familiar institution in American jurisprudence; it may or may not involve a legitimate controversy and both parties may possibly want the same judgment. But if the court wishes to render judgment it will close its eyes to the realities and perceive only the ostensible conflict of interests." Borchard, Declaratory Judgments 32-33 (2d ed 1941).

444

■ In this state, however, we have strong precedent against advisory opinions. Mere difference of opinion as to the constitutionality of an act does not afford ground for invoking a judicial declaration having the effect of adjudication. *Amer. F. of L. et al v. Bain et al*, 165 Or 183, 215, 106 P2d 544, 130 ALR 1278 (1940); *Oregon Cry. Mfgs. Ass'n v. White*, 159 Or 99, 111, 78 P2d 572 (1938).

■ The construction of the statues involved in this litigation can be accomplished, if necessary, in an adversary proceeding any time a defendant demurs to an indictment on the grounds that the indictment does not charge a crime. If a defendant should assert that the rules under which he is being prosecuted were not properly promulgated, the trial court can decide the question and either party can appeal. ORS 138.020. When a simple and convenient means is at hand for testing a law, a declaratory suit between friendly parties will not lie. See *Campbell v. Henderson*, 241 Or 75, 80, 403 P2d 902 (1965); *Recall Bennett Com. v. Bennett et al*, 196 Or 299, 322-323, 249 P2d 479 (1952). Other cases are collected in the Annotation, 10 ALR3d 727, 772 (1966), and in Borchard, Declaratory Judgments (2d ed 1941), at 304.

The questions which the parties have attempted to raise in this proceeding may very well be important ones. If so, the value of truly adversary proceedings is even more plain. The advocacy of those who have something at stake in the outcome of such litigation is far more helpful to a court of law than are the academic speculations of bystanders.

■ Our constitution created three branches of government, and wisely provided that each branch refrain from performing functions assigned to the others. Oregon Constitution, Art III, § 1. As an officer of

the executive branch, the district attorney must initially decide the meaning of a criminal law. If a district attorney believes legislative clarification is in order, the Assembly is likely to give him a careful hearing.

Until a defendant questions a particular criminal law in court, however, the executive branch is entitled to assume that the Legislative Assembly meant what it said when it enacted the law.

■ The judicial branch has no function in advising either the executive or the legislative branch as to the proper course to take, when the precise question is not before the court. See *Federation of Labor v. McAdory*, 325 US at 461.

The appeal is dismissed without costs to either party.