544 November 3, 2016 No. 70

IN THE SUPREME COURT OF THE
STATE OF OREGON

MT & M GAMING, INC.,
a Washington corporation,
*Petitioner on Review,*

*v.*

CITY OF PORTLAND,
an Oregon municipal corporation,
*Respondent on Review.*

(CC 121114443; CA A154206; SC S063648)

On review from the Court of Appeals.*

Argued and submitted May 10, 2016.

Thomas R. Rask, III, Kell, Alterman & Runstein, L.L.P., Portland, argued the cause and filed the briefs for petitioner on review.

Denis M. Vannier, Deputy City Attorney, Portland, argued the cause and filed the brief for respondent on review. Also on the brief was Harry Auerbach, Chief Deputy City Attorney, Portland.

Thomas M. Christ, Portland, argued the cause and filed the brief for *amicus curiae* ACLU Foundation of Oregon Inc.

Carl Sniffen, Salem, filed the brief for amicus curiae League of Oregon Cities. Also on the brief was Sean E. O'Day.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and Shorr, Justice pro tempore.**

WALTERS, J.

The judgment of the trial court and the decision of the Court of Appeals are affirmed.

_____

\* Appeal from Multnomah County Circuit Court, Henry Breithaupt, Judge pro tempore. 274 Or App 100, 360 P3d 611 (2015).

\*\* Nakamoto, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

This case concerns the standing requirements for actions brought under the Uniform Declaratory Judgment Act, ORS 28.010 to ORS 28.160, an action that is available to "any person *** whose rights, status or other legal relations are affected by" the law or legal instrument about which the declaration is sought. ORS 28.020. Plaintiff, a Washington corporation that operates a casino in that state, brought an action against the city of Portland under that act, seeking declarations that certain practices the city had approved through its "social gaming" permitting system were contrary to Oregon law. Plaintiff asserted that it was adversely affected by the city's issuance of permits to engage in those gaming practices to establishments in Portland, in that persons who previously had patronized its casino in Washington now were choosing to gamble in city-permitted card rooms in Portland instead. The city moved for summary judgment on the ground that plaintiff lacked standing, and the trial court granted the motion, reasoning that, insofar as plaintiff's Washington casino was not subject to the "legal system" that was the object of the declaratory judgment action, plaintiff had no "rights, status [or] other legal relations" that could be adversely affected. The Court of Appeals agreed, holding that, to establish standing under the declaratory judgment act, a plaintiff must be subject to the laws it asks the court to construe or must, at least, do business or own property in Oregon. *MT & M Gaming, Inc. v. City of Portland*, 274 Or App 100, 106, 360 P3d 611 (2015). Plaintiff petitioned for review, arguing that the standing requirement that the Court of Appeals had proposed has no basis in the law. We allowed the petition.

Before this court, the city acknowledges the Court of Appeals' position but argues that plaintiff lacks standing for a somewhat different reason—that the interest that plaintiff claims has been adversely affected by Oregon's social gaming statutes is not within the "zone of interests" that those statutes seek to protect. The city thus argues that this court should limit standing in a declaratory judgment action to those persons who can demonstrate that their interests are within the "zone of interests" that the relevant statute seeks to protect. The city contends that

federal courts and other jurisdictions have imposed that standing requirement and that, in the interest of uniformity, we should do so as well.

For the reasons that follow, we conclude that plaintiff is correct that the Court of Appeals overstated the standing requirement under the declaratory judgment act when it said that a plaintiff must be "subject to" a statute that it asks the court to construe or must do business in or own property in Oregon. Instead, to have standing to bring a declaratory judgment action construing a statute, a plaintiff need only have a legally recognized interest that is affected by the statute. We also conclude, however, that the city is incorrect in suggesting that this court is required to recognize the "zone of interest" test for standing or that the only legally recognized interest that is cognizable for standing purposes is an interest that is within the "zone of interests" that the statute at issue is intended to protect. Although some affected interests may be legally recognized precisely because they are the direct object of or at least within the broad purposes of a statute targeted in a declaratory judgment action, other affected interests that do not bear that kind of relationship to the statute also may be legally recognized—and thus confer standing. Legal recognition can come from a variety of sources, not only from the statute under construction or consideration. In this case, we conclude that the interest that plaintiff relies on to establish standing—an interest in requiring Oregon establishments to abide by social gaming laws to which plaintiff itself is not subject—is not a legally recognized interest. It is not an interest that is within the purposes of the social gaming laws, it is not one that has been recognized by the common law, and plaintiff has not sufficiently developed any other argument for its legal recognition. Accordingly, we affirm the decision of the Court of Appeals, albeit under a different standing analysis than the one that that court employed.

## RELEVANT STATUTES AND ORDINANCES

Before we turn to the factual particulars, we describe the relevant statutes and ordinances. Gambling is unlawful in Oregon unless it is specifically authorized by

law, and it is a crime to engage in or profit from unlawful gambling. ORS 167.117(24), ORS 167.122, ORS 167.127. One kind of gambling that is specifically authorized by law involves so-called "social games." As relevant to this case, a "social game" is,

> "a game, other than a lottery, between players in a private business, private club or place of public accommodation where no house player, house bank or house odds exist and there is no house income from the operation of the social game."

ORS 167.117(21)(b). Social games may be conducted in a private business, private club, or place of public accommodation only if authorized by a local ordinance. ORS 167.121.

The city of Portland has enacted an ordinance that allows businesses and clubs to offer social games if they obtain a permit from the city. Portland City Code 14A.70.050. The city's ordinance is consistent with the social games statutes, in that it prohibits house players, house banks, house odds, and house income from games. Portland City Code § 14A.70.040. The ordinance also imposes limitations that are not part of the statutes, including a betting limit of one dollar per game. *Id*.

### FACTUAL AND PROCEDURAL BACKGROUND

We take the relevant facts, which are generally undisputed, from the summary judgment record. For many years, the only entities that obtained permits under Portland's ordinance were private social and athletic clubs, where the hosting of social games was a relatively insignificant adjunct to the entities' primary mission. In recent years, however, the city has granted social gaming permits to other private businesses which, at the time of their applications, signaled an intention to make gaming—in particular, poker—central to their businesses: Specifically, they intended to host more or less continuous poker games and tournaments, involving entry fees and/or "buy-ins," although they would also sell food and beverages and offer other activities. In their communications with the city, those businesses explained that they would return all of the proceeds from

players' buy-ins to players in the form of winnings; however, they would charge a daily "membership fee" to anyone entering the establishment, regardless of his or her participation in the games or tournaments, and would keep that income. The city seemingly accepted those arrangements as consistent with the prohibition on "house income from the operation of the social game," ORS 167.117(21)(b). It issued permits to the businesses, but warned them

> "that any membership fee or cover charge must be charged to all who enter the club or business (and not just to those participating in social games), that the membership fee or cover charge cannot be imposed for participation in social games, and that the club or business must offer services or activities in addition to social games if there is a membership fee or cover charge."

Plaintiff owns and operates a casino in Washington—a state that does not have the same legal limitations on gambling that Oregon has. Historically, plaintiff has drawn many of its customers from the Portland area. In recent years, however, plaintiff's casino has experienced a drop off in business, and plaintiff contends that at least part of the decrease can be traced to the proliferation, in Portland, of card rooms operating under city-issued social gaming permits. Believing that those card rooms violate Oregon's statutory prohibition on "house income" from social games by collecting daily membership fees or cover charges from patrons, plaintiff filed the present declaratory judgment action against the city, seeking a number of declarations about the legality of the activities engaged in by card rooms under social gaming permits issued by the city. In its complaint, plaintiff alleged that the city had been issuing permits to poker establishments that were violating the social gaming laws by, among other things, charging daily "membership fees" and permitting patrons to tip house-provided dealers. Plaintiff further alleged that the city had taken the position that those practices did *not* violate Oregon's social gaming laws. Plaintiff sought a declaration that charging any form of membership fee or cover charge in exchange for the right to participate in a game of chance disqualifies the arrangement from the statutory authorization for offering

social games and constitutes a felony under Oregon law.[1] Finally, relevant to the issue of its standing to bring the action, plaintiff alleged that it was

> "substantially and adversely affected in that a significant portion of its patrons and customers have stopped attending plaintiff's lawful operation, and have elected to attend and participate in the unlawful operations of the establishments granted permits by the city. Plaintiff cannot establish a similar operation in Portland—even with a permit from the city—without violating Oregon law and the Portland City Code."

In its answer to the complaint, the city raised several affirmative defenses, including lack of standing and failure to join necessary parties (specifically, the businesses that were operating under social gaming permits from the city).

Plaintiff moved for partial summary judgment, arguing that there was no genuine issue of material fact with regard to certain of its allegations. In support of that motion, plaintiff submitted various affidavits and documents, including—in apparent support of its allegations directed at standing, quoted above—a senior executive's affidavit describing the downturn in business the casino had recently experienced and explaining how plaintiff had determined that a portion of the downturn could be attributed to the proliferation of Portland card rooms under the city's interpretation of the social gaming statute.

The city filed a cross-motion for summary judgment on its standing and failure-to-join-necessary-parties defenses. On the issue of standing, the city asserted that plaintiff was required, but had failed, to show that it had a legally cognizable interest under the social gaming statutes that was adversely affected by the city's interpretation of that statute. It explained that the statutes reflect a legislative concern that gambling is detrimental to Oregon citizens, and that the legislature was *not* concerned with

---

[1] Plaintiff also sought declarations that *paying* a cover charge for the right to participate in games constitutes unlawful gambling, that permitting or encouraging the tipping of dealers who are provided by the establishment disqualifies the games from the social game exception, and that promoting games involving buy-ins in excess of one dollar per game violates the city's social gaming ordinance.

whether Washington state casinos lose the patronage of Oregon residents. Plaintiff responded that the premise underpinning the city's argument—that, in order to have standing, a plaintiff must show that its affected interest is one that the law at issue is specifically designed to protect— lacks any basis in the law. However, in apparent response to the state's arguments on the issue of standing, plaintiff sought leave to amend its complaint to include a request for an alternative declaration that plaintiff could lawfully operate a business in Portland in the same manner as the city's other permittees.

   Ultimately, the trial court granted summary judgment for the city on the issue of standing,[2] but it based its decision on a somewhat different analysis than the one the city had asserted. It appeared to acknowledge that, in the declaratory judgment context, standing may be based on some "practical adverse effect," whether or not the interest affected is one that the law at issue seeks to protect. It noted, in particular, that "this can occur in the context of a government regulatory system, *** if one competitor in the system does not comply with rules with which other competitors must, at a cost, comply." The trial court concluded, however, that standing can exist in those circumstances only when the plaintiff's activities are conducted in the same "legal system" as the plaintiff's competitors: "The constitutions, statutes, charters and ordinances about which this court can speak do not offer any protection for the 'rights, status or other legal relations' of plaintiff until and unless plaintiff comes within the operation of those statutes, charters and ordinances." Given that there was no dispute that plaintiff's casino was subject to Washington's, and not Oregon's, gambling laws, the trial court concluded that summary judgment was warranted. The trial court also denied plaintiff's motion to amend its complaint, explaining that the city was "entitled to an order and judgment on the pleadings that were operative at the time of the motion, particularly with respect to the relief requested." The court thus issued a

_____

[2] Initially, the trial court granted summary judgment for the city without specifying whether its decision was based on lack of standing or failure to join necessary parties. After plaintiff offered to join the social gaming permittees as parties, the trial court clarified that its decision was based on lack of standing.

judgment denying plaintiff's motion for partial summary judgment, granting the city's motion for summary judgment, and dismissing plaintiff's complaint with prejudice.

On plaintiff's appeal, the Court of Appeals generally agreed with the trial court's position on the issue of standing. It opined that standing to seek a declaration about the application of an Oregon law under the declaratory judgment act can be based on the law's effect on the plaintiff's economic interests, but only if the economic effect is or relates to a legally recognized interest. The Court of Appeals concluded that, given that plaintiff "ha[d] not alleged that it does business or owns property in Oregon, [was] not subject to the laws it asks the court to construe and, in fact, ha[d] no legal interests in the state," it had failed to show that the alleged harm to its economic interests was the kind of harm to a "legally recognized interest" that is necessary to establish standing under ORS 28.020. *MT & M Gaming*, 274 Or App at 106.

ARGUMENTS IN THIS COURT

Before this court, plaintiff argues that the trial court and Court of Appeals decisions are based on a misunderstanding of the standing requirements for declaratory judgment actions. Plaintiff suggests, in particular, that those courts wrongly believed that standing to bring a declaratory judgment action based on real or threatened economic effects of a law or interpretation thereof only exists when the plaintiff itself is subject to the law. In its response to plaintiff's argument, the city distances itself to some extent from the idea, expressed by the courts below, that to have standing to challenge a law or its application under the ORS 28.020, a plaintiff must be a person to whom the law directly applies. It argues for a somewhat more liberal rule—that the interest of the plaintiff that allegedly is affected by the statute must fall within the "zone of interests" that the challenged statute seeks to protect. Applying that rule, it argues that an out-of-state casino's interest in keeping its Portland-based customers—the interest that plaintiff alleges is affected by the city's interpretation and application of the social gaming statutes—is outside of the zone of interests implicated by those statutes.

We thus are confronted with alternative theories regarding the kind of interest that a plaintiff must assert in order to have standing to challenge a statute, or a governmental entity's application or interpretation thereof, under Oregon's declaratory judgment act. Under the more stringent theory, a plaintiff would have to be "subject to" the statute—that is, the plaintiff's affected interests must be ones that the statute operates on directly and by design. Under the more expansive theory, the relationship between the statute and the affected interest can be somewhat looser: The interest that is affected need only be within the "zone of interests" that the legislature sought to protect by enacting the statute—that is, within the statute's broader objectives. Both theories thus propose that, when a plaintiff contends that its interests are affected by a statute about which it seeks a declaration, the touted interests are only relevant, for purposes of standing to bring the declaratory judgment action, if, in either a narrow sense or in a broader one, they are the statute's intended objects. The validity of those proposed criteria for standing under the declaratory judgment statute is the central question in this case.

## STANDING UNDER THE DECLARATORY JUDGMENTS ACT

It is important to emphasize at this point that, in Oregon, standing is not a generic concept but largely depends on the statute under which the plaintiff seeks relief.[3] *Morgan v. Sisters School District #6*, 353 Or 189, 194, 301 P3d 419 (2013); *Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996); *Eckles v. State of Oregon*, 306 Or 380, 384, 760 P2d 846 (1988), *appeal dismissed*, 490

---

[3] That is one reason for rejecting the idea, suggested by the Court of Appeals, that standing might depend on whether a plaintiff does business or owns property in Oregon. *MT & M Gaming*, 274 Or App at 106. As we explain below, a plaintiff's standing under Oregon's declaratory judgment statute depends on he or she having a legally recognized interest that is affected by the subject matter of the declaration that is sought. It seems self-evident that a person who does not own property or do business in Oregon may still have a legally recognized interest in the meaning or application of an Oregon law. For instance, a Washington resident who does not own property or do business in Oregon may have a legally recognized interest in avoiding injury from toxic chemicals released by Oregon polluters, and thus may have standing to seek a declaration, in Oregon, about an Oregon agency's interpretation of an Oregon environmental law.

US 1032 (1989). Accordingly, when considering issues of standing under a given statute, we do not rely on general pronouncements about standing drawn from cases involving different statutes. Neither do we consider federal notions of standing that do not apply in Oregon. *Local No. 290* at 566; *Rendler v. Lincoln Co.*, 302 Or 177, 180, 728 P2d 21 (1986); *Benton County v. Friends of Benton County*, 294 Or 79, 82, 653 P2d 1249 (1982).

Here, standing under the declaratory judgment act is at issue. The relevant provision of the act provides:

> "Any person *** whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

ORS 28.020. Thus, to bring a declaratory action regarding a statute, a plaintiff must show that it is a "person" and that it has some "right[], status or other legal relation[]" that is "affected by" the statute.[4]

In *Morgan,* this court identified three considerations that determine a plaintiff's standing to bring a declaratory judgment action, based on the wording of ORS 28.020 and cases decided under the statute. First, the plaintiff must establish that the challenged law causes "some injury to or impact upon a legally recognized interest of the plaintiff's, beyond an abstract interest in the correct application or the validity of [the] law." 353 Or at 195. Although *Morgan* does not explicitly make the point, that first requirement effectively interprets the wording of ORS 28.020, reading the phrase "rights, status or other legal relations" as referring to *any* "legally recognized interest." That interpretation is apt, given the phrase's reference to disparate concerns ("rights," "status" and "other *** relations") and the

---

[4] Those requirements define both what is required for a plaintiff to obtain an adjudication—standing—and what is required for a plaintiff to have a claim for relief. *See Eckles,* 306 Or at 383-84 (explaining that this court uses the term "standing" to refer to the right to obtain an adjudication of a claim and that standing is logically considered prior to consideration of the merits of a claim).

narrowing implication of the modifier "legal": Any "interest" may qualify as long as it is "legally recognized."

The other two requirements for standing announced in *Morgan* are drawn from prior standing cases decided under the declaratory judgment act and are less closely tied to the statute's wording. In addition to showing an injury or impact on a legally recognized interest, a plaintiff must show that the claimed injury or impact is real or probable, not hypothetical or speculative. *Morgan*, 353 Or at 195. Finally, the plaintiff must show that a decision by the court will in some sense rectify the injury, *i.e.*, that it will have "a practical effect on the rights that the plaintiff is seeking to vindicate." *Id.* at 197.

Notably, *Morgan* makes no mention of any additional requirements—for instance, a requirement that plaintiffs be the intended beneficiaries, either in a narrow or broad sense, of any statute or other law about which they seek a declaration. Neither do any of this court's other standing cases under the declaratory judgment act refer to such a requirement. The city suggests, however, that such a requirement is implicit in the analysis in certain of our cases, most notably *Doyle v. City of Medford*, 356 Or 336, 337 P3d 797 (2014).

In *Doyle*, persons who had retired from employment with the city of Medford sought a declaration under ORS 28.020 about the effect of a statute, ORS 243.303(2), which requires local governments to extend to their retirees the same health insurance coverage they provide to their employees "insofar as and to the extent possible." The plaintiffs argued that Medford had breached its duty under that statute by refusing to allow them to continue their health insurance coverage after their retirement. Medford argued that allowing retirees to continue their coverage was too costly and therefore not "possible" and, thus, that it had had not violated the statute. The issue of the plaintiffs' standing to bring their declaratory judgment claim arose, and this court analyzed the standing issue—applying the three standing considerations identified in *Morgan*—as follows:

"The first consideration is that there must be some injury or other impact upon a legally recognized interest beyond an

abstract interest in the correct application or the validity of a law. *Plaintiffs here satisfy that requirement: They are members of the class of persons to whom the duty imposed by ORS 243.303(2) is owed, and they claim injuries based on the city's asserted violation of that duty.* The second consideration is that the injury must be real or probable, not hypothetical or speculative. Plaintiffs also satisfy that requirement: There is a present and actual dispute between the parties about the existence and scope of plaintiffs' rights and the city's obligations *under the statute.* The third and final consideration is that the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate. Again, that requirement is satisfied. A judgment to the effect that plaintiffs are entitled to health insurance benefits under the statute would afford plaintiffs a judicial declaration of rights that, at least prospectively, would vindicate their rights *under ORS 243.303(2).*"

356 Or at 372 (citations omitted; emphasis added).

The city argues that that analysis suggests that, to have standing to bring a declaratory judgment action with respect to a given statute, plaintiffs must show that the statute directly applies to their asserted interests. It shows, in the city's view, that the right or interest plaintiffs seek to vindicate must be one that arises "under the statute," and that plaintiffs must be a "member[] of the class of persons" at which the statute is directed—either by imposing a duty or creating a right or "legally recognized interest."

The city confuses what is sufficient to support standing to bring a declaratory judgment action with what is necessary. The fact that this court concluded in *Doyle* that the requirements for standing were satisfied in those circumstances does not mean that those are the only circumstances that will support standing to challenge a statute under the declaratory judgment act. Other cases from this court illustrate the point; *[League of Oregon Cities v. State of Oregon](#)*, 334 Or 645, 56 P3d 892 (2002) is an example. In the first of two actions that this court considered in that case, multiple plaintiffs brought declaratory judgment actions challenging Ballot Measure 7 (2000), a voter-approved initiative that required state and local governments to either compensate landowners for regulations that affected the

value of their land or waive application of the regulation with respect to that land. The plaintiffs sought a judicial declaration that the measure was invalid because it had not been enacted in accordance with the requirements of the Oregon Constitution. *Id.* at 649-51. Of the plaintiffs, only two were found to have standing—a rancher who had testified that the measure would cause the county to waive limitations on development near his ranch, which would lead to increased development to an extent that would threaten his ability to continue ranching the land, and a town mayor who said that his home would decrease in value if, in response to the measure, the county waived regulations that prevented a neighbor from developing a mine on her property. *Id.* at 659-61. The initiative measure at issue did not apply to those plaintiffs—at least not directly. They were not state or local governments; neither were they landowners whose land values were directly and adversely affected by state and local regulations. Instead, the plaintiffs alleged that their land values and other financial interests were affected indirectly, by the measure's operation on state and local governments. Yet, in the absence of any direct application of the measure to those plaintiffs, this court concluded that the plaintiffs had demonstrated that the measure would adversely affect their "legally cognizable interests" and that the plaintiffs therefore had standing.

Perhaps in recognition of cases like *League of Oregon Cities*, the city instead suggests that the standing requirement for which it contends is more properly formulated as a requirement that the right or interest that allegedly is affected by the statute at issue be within the "zone of interests" that the statute seeks to protect. And it is true that the result in *League of Oregon Cities* could be explained in those terms: If one allows that Ballot Measure 7 (2000) *generally* was concerned with the economic impacts of land use regulation on landowners, a landowner's interest in having neighboring lands regulated in a way that promotes his or her own economic interests arguably could be viewed as within the measure's "zone of interests." But, again, there is nothing in *League of Oregon Cities* that suggests that the court in that case decided the standing issue on the basis of a "zone of interest" *requirement*. The most that can be said

about the case is that it shows that a plaintiff whose interests *do* fall generally within the intended objectives of the targeted statute has standing to bring a declaratory judgment act with regard to the statute.

The city argues, however, that, because the federal courts and some other jurisdictions have adopted a "zone of interest" requirement to establish standing to challenge a statute or an interpretation thereof through a declaratory judgment action, this court should do so as well.[5] It points to ORS 28.150, which provides that the declaratory judgment act should "be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments." But that argument presumes that the standing issue here is, at bottom, simply a question of statutory construction—that is, that there are no relevant principles of standing beyond the declaratory judgment statutes themselves, in either Oregon or the law of other jurisdictions. The validity of that presumption is questionable, at best, and given the significant differences between our own general approach to standing and that of other jurisdictions, it behooves us to consider the origins and application of the "zone of interest" requirement before adopting it as part of declaratory judgment jurisprudence on the theory that ORS 28.150 requires it.

## THE "ZONE OF INTEREST" FORMULATION

The "zone of interest" formulation first arose in a United States Supreme Court case, in the context of an action brought under 5 USC section 702, a provision of the federal Administrative Procedures Act (APA) that grants

---

[5] *See, e.g.*, *Lexmark International, Inc. v. Static Control Components, Inc.*, 527 US __, 134 S Ct 1377, 1388-89, 188 L Ed 2d 392 (2014) (describing "zone of interest" test as generally applicable tool for determining who may invoke a statutory cause of action); *Five Corners Family Farmers v. State of Washington*, 173 Wash 2d 296, 302-03, 268 P3d 892 (2011) ("In order to establish that a party's 'rights, status or other legal relations' are affected by a statute," the party's asserted interest must be "arguably within the zone of interests to be protected or regulated by the statute * * * in question"); *Zehner v. Village of Marshall*, 288 Wis 2d 660, 668, 709 NW2d 64 (2005) ("To have standing, a party must [have an ] 'interest [that] is arguably within the zone of interests' that [the] statute or constitution provision under which the claim is brought, seeks to protect").

standing to "any person" who is "aggrieved by agency action within the meaning of a relevant statute." A data processing business had challenged a ruling of the Comptroller of the Currency that allowed national banks to provide data processing services, as an incident to their banking services, to other banks and to their customers. The district court dismissed the complaint for lack of standing, and the United States Court of Appeals for the Eighth Circuit affirmed, holding that the plaintiff business lacked standing because it had no "private legal interest" in the ruling. *Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 406 F2d 837, 843 (8th Cir 1969). When the Eighth Circuit thus concluded that the plaintiff's standing depended on it having a "private legal interest" that was affected, it was looking for a legal right in a traditional, private rights sense—"one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." 406 F2d at 840 (*quoting Tennessee Electric Power Co. v. TVA,* 306 US 118, 137-38, 59 S Ct 366, 83 L Ed 543 (1939)).

On review of the Eighth Circuit's decision, the United States Supreme Court rejected that "legal interest" requirement and the associated private rights model as appropriate criteria for standing under the APA. *Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 397 US 150, 90 S Ct 827, 25 L Ed 2d 184 (1970). It held that, instead, to satisfy the "case or controversy" requirement of Article III of the United States Constitution, an "injury in fact" was required. In addition, the question of standing concerned

> "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus the Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.' That interest, at times, may reflect 'aesthetic, conservational, and recreational' as well as economic values."

397 US at 153 (citations omitted). The court explained why that broader concept of standing is particularly fitting for claims that specific governmental actions are contrary to statute: "Where statutes are concerned, the trend is toward

enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved 'persons' is symptomatic of that trend." *Id.* at 154.

Thus, after finding that the plaintiff had satisfied what the court identified as the "case or controversy" requirement of Article III of the United States Constitution—injury in fact—by showing it had lost revenue because of the activities that the Comptroller's ruling allowed, the Supreme Court in *Data Processing* applied a "zone of interest" test to the plaintiff's asserted interests. It concluded that the plaintiff's interest in precluding banks from competing against it in its business of providing a non-banking service to both banks and consumers arguably was within the zone of interests protected by the Bank Service Corporation Act of 1962, 76 Stat 1132, 12 USC section1864, which limits the services that bank service corporations can perform. The plaintiff therefore had standing to bring its action. *Id.* at 157-58.

After *Data Processing*, some lower federal courts began to apply the zone of interests test as a general restriction on standing in all public law cases, identifying it as a general "prudential" requirement. *See*, *e.g.*, *Idaho v. ICC*, 35 F3d 585, 590 (DC Cir 1994) (applying zone of interest requirement in examining standing to bring claims under Endangered Species Act); *Mount Graham Red Squirrel v. Espy*, 986 F2d 1568, 1581 (9th Cir 1993) (applying zone of interest test to Arizona-Idaho Conservation Act; *Dan Caputo Co. v. Russian River County Sanitation Dist,* 749 F2d 571, 574 (9th Cir 1984) (applying zone of interest test to citizen suit provision of Clean Water Act).[6] Notably, when used in contexts other than the APA, the test often had the effect of constricting, rather than enlarging, the category of persons who otherwise would have standing under the relevant statute: Statutes by their terms might give unrestricted

---

[6] Other courts, including the U.S. Supreme Court on some occasions, declined to apply the zone of interest test outside of the APA context. *See*, *e.g.*, *Wyoming v. Oklahoma*, 502 US 437, 112 S Ct 789, 117 L Ed 2d 1 (1992) (in Commerce Clause challenge brought by the state of Wyoming against Oklahoma's statute requiring coal burning utilities to use ten percent Oklahoma coal, Wyoming was found to have standing based on an injury in fact—falling tax revenues from coal sales—without any consideration of whether that tax effect was within the zone of interests protected by the Commerce Clause).

access to a cause of action, but application of the zone of interest test meant that only persons with certain types of interests would be deemed to have standing. At one point, the Supreme Court explained that, although the zone of interest test in fact was a generally applicable prudential requirement, Congress could legislatively negate its application by broadly defining the class of persons who were entitled to sue under the statute. *Bennett v. Spear*, 520 US 154, 163-64, 117 S Ct 1154, 137 L Ed 2d 281 (1997) (declining to apply zone of interest test to limit standing under Endangered Species Act to persons alleging ecological interests, because statute provides for action by "any person"). The Court justified that theory of legislative negation with a presumption that Congress legislated "against the background of our prudential standing doctrine." *Id.* at 163.

More recently, however, in *Lexmark International, Inc. v. Static Control Components, Inc.*, 527 US __, 134 S Ct 1377, 188 L Ed 2d 392 (2014), the Supreme Court rejected the characterization of the zone of interest requirement as a prudential doctrine and suggested that it is best understood as an inquiry into statutory intent—"whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." 527 US at __, 134 S Ct at 1387. Although the Court in *Lexmark* formally acknowledged the idea of legislative negation, it ultimately concluded that the zone of interest test would apply even when the statute at issue, when "read literally," seemed to allow anyone who was "factually injured" to sue. 134 S Ct at 1388. Thus, it appears that, at least in the federal courts, the zone of interest test has evolved into the presumed test by which a court determines whether a party has standing and that that presumption can rarely, if ever, be overcome.

## A LEGALLY RECOGNIZED INTEREST IS REQUIRED

Having set out that brief history of the zone of interest requirement in federal standing law, we turn to the question of whether and how that requirement might relate to a question of standing under our declaratory judgment act. As an initial matter, we can dismiss outright the idea that the requirement is specifically one of "federal law[] ***

*on the subject of declaratory judgments*," with which, under ORS 28.150, we must attempt to harmonize Oregon's declaratory judgment statute. The foregoing history clearly shows that the requirement is a matter of general federal standing jurisprudence.

To the extent that the city is suggesting that Oregon might have a similar general standing rule, applicable to *any* statutory cause of action, either as a prudential matter or based on a presumption that the legislature legislates against the backdrop of a zone of interest requirement, it clearly is wrong. This court never has referred to such a general standing requirement—prudential or otherwise— in cases where the issue might be expected to arise. And, in the absence of any statement about the requirement in our cases, the usual justification for generally applying a zone of interest requirement also is absent: One cannot presume that the legislature has been legislating with such a requirement in mind.

The city suggests that a "zone of interest" requirement particular to the declaratory judgment act is implied by the standing requirement, identified in *Morgan*, that the application or interpretation of the law at issue cause "some injury to or impact upon a legally recognized interest [of the plaintiff's], beyond an abstract interest in the correct application or the validity of [the] law." 353 Or at 195. The city thus argues that, when a declaratory judgment claim relies upon a statute, an interest asserted can only be "legally recognized" if it is in the zone of interests that the statute seeks to protect.

The city's suggestion raises an obvious question: What did this court mean, in *Morgan* and other standing cases under the declaratory judgment act that have used the term, by a "legally recognized interest?" *Id.* To begin, it is evident that the requirement is looking for something more than a simple "injury in fact": The injury must be to an interest that is "legally recognized." As a general proposition, legal recognition can come from many sources— statutes, constitutional provisions, regulations, local ordinances, and the historical and evolving common law. Did this court in *Morgan*, as the city suggests, use the phrase

"legally recognized" to refer to something less than that full range of possibilities when the declaratory judgment action is directed at a statute? Did we mean that only interests that are defined or recognized by the self-same statute are relevant in that context? An examination of our standing cases under the declaratory judgment act suggests that that is not the case.

In the two declaratory judgment cases that we have discussed thus far—*Doyle* and *League of Oregon Cities*, the plaintiffs' interests that allegedly were affected in fact *were* legally recognized by the very statutes about which the plaintiffs sought declarations. *Doyle* supports what would seem to be obvious: that a person whose interests are the very object of a statute at issue, viz., a person who, in effect, is the statute's intended beneficiary, has standing to seek a declaration as to the statute's validity, meaning or effects. *League of Oregon Cities* shows that a person whose interests are within the statute's broader purposes or "zone of interest," but are not necessarily its direct object, also has standing to bring a declaratory judgment action with respect to the statute.

Other cases show, however, that an affected interest may be legally recognized by some source other than the statute targeted in the declaratory judgment action. In *Eckles*, an employer insured by SAIF was found to have standing to seek declaratory relief with respect to a statute that transferred SAIF funds to the state's general fund, on the theory that he had property rights in the SAIF fund and that the transfer would impair his insurance contract with SAIF. 306 Or at 380-86. This court explained that those property and contract interests, which have their source in the common law, provided a basis for standing under the UDJA: "Whatever else may be included in the phrase 'rights, status or other legal relations' in ORS 28.020, the phrase certainly includes property and contract rights." *Id.* at 385. While it might be possible, at this juncture, to craft an argument that those property and contract rights were within the broad purposes of the transfer statute at issue and thus were legally recognized by that statute, the fact remains that this court in *Eckles* expressed no interest in the question.

And, in *Eckles,* the court also called attention to another line of cases in which this court has given legal recognition to an interest other than an interest within the broad purposes of the statute at issue—cases in which this court has declared that a taxpayer's interest in avoiding excessive or improper taxes can support standing to seek a declaration regarding the validity, meaning, or application of a statute under the declaratory judgment act. *Id.* at 585. In one case in that line, *Hanson v. Mosser,* 247 Or 1, 427 P2d 97 (1967), an unsuccessful bidder on a state contract sought a declaration that the state's award of the contract to another bidder violated a state statute requiring that public contracts be awarded to the "lowest responsible bidder." The court concluded the unsuccessful bidder had standing to bring the action as a taxpayer "whose tax burden will be augmented by unlawful expenditure of public funds." 247 Or at 11. In another such case, *Childs v. Marion County*, 163 Or 411, 97 P2d 955 (1940), the court held that a taxpayer had standing to seek a declaration that defendant governments were not following a statutorily-required lien foreclosure procedure, because the taxpayer's tax burden would be increased by waste arising from improper procedure. Although this court also has held that a bare allegation of taxpayer status is insufficient, and that, to have standing, plaintiffs must allege that they have suffered adverse tax consequences as a result of the challenged governmental action,[7] this court's recognition of "taxpayer standing" in appropriate cases demonstrates the problem with the city's argument here. This court has not limited standing to those instances in which plaintiffs can demonstrate that they are the direct object of, or in which their asserted interests fall within the broader purposes of, the statutes that they place at issue. Rather, this court has recognized both that standing to challenge a statute under the declaratory judgment act extends to all who allege and ultimately can demonstrate a legally recognized interest that is affected by the relevant statute, and that legal recognition can come from a variety of sources, not only from the statute under consideration.

---

[7] *See Gruber v. Lincoln Hospital District*, 285 Or 3, 8-9, 588 P2d 1281 (1970) (without demonstrating how agreement affected tax liability, taxpayer did not have standing to seek invalidation of hospital service agreement).

## PLAINTIFF'S INTEREST IS NOT
## LEGALLY RECOGNIZED

With that understanding, we now must consider whether the interest that plaintiff relied on in this case so qualifies. Plaintiff essentially alleged and, in response to the city's motion for summary judgment offered evidence of, a competitive injury—that it was adversely affected by the city's misapplication of the social gaming statutes "in that a significant portion of its patrons and customers have stopped attended plaintiff's lawful operation, and have elected to attend and participate in the unlawful operations of the establishments granted permits by the city."

Plaintiff has not, however, identified any basis for concluding that that injury affects an interest that is legally recognized within the meaning of the standing requirements set out in *Morgan*. First, Oregon's social gaming laws do not seek to protect, or otherwise "recognize," such an interest. As the city correctly asserts, "Oregon's gambling statutes, and Portland's social gaming ordinance, are not intended to protect out-of-state gambling operations * * * against competition from locally-licensed social games." Second, no principle in Oregon's common law tradition appears to protect that particular competitive interest.[8]

As to other possibilities beyond those traditional sources for legal recognition of the asserted competitive interest, plaintiff has failed to sufficiently develop an argument that we find persuasive. Although this court's decision in *Hanson* and certain Court of Appeals' decisions may suggest that some interests in fair competition (*i.e.*, competition on equal terms) might support standing under the declaratory judgment act,[9] plaintiff's asserted interest here

---

[8] There are common law principles that might be said to give legal recognition to certain, more specific competitive interests—those relating to, for example, trademark infringement, business defamation, and the like. None of those are relevant to the present case.

[9] The Court of Appeals appeared to recognize an interest in fair and equal competition as sufficient to support standing under the declaratory judgment act in *Associated Reforestation Contractors, Inc v. Workers' Compensation Bd.*, 59 Or App 348, 650 P2d 1068 (1982) and *Thunderbird Motel v. City of Portland*, 40 Or App 697, 596 P2d 994 (1979). In *Associated Reforestation Contractors,* a trade association of reforestation companies sought a declaratory judgment that the defendant, a reforestation cooperative, was subject to the same workers'

is not such an interest. Instead, plaintiff's asserted interest is anti-competitive: Plaintiff seeks an interpretation of Oregon's gambling and social gaming laws that would allow it to maintain the competitive advantage that it enjoyed when, under Washington law, it could conduct betting games that its competitors, operating under the constraints of Oregon law, could not obtain permits to conduct.

For the reasons stated, we agree with the trial court's and Court of Appeals' ultimate conclusion that plaintiff lacked standing to bring this action. However, to reiterate, we base our conclusion on different reasoning. We reject the idea that, to establish standing to seek a declaration about a statute's validity, meaning, or effect, a plaintiff must show that it is subject to the statute or that its alleged interests are within the zone of interests that the statute seeks to protect. Rather, to have standing to seek a declaration with respect to a statute, a plaintiff must show that it has a "legally recognized interest" that is adversely affected by the statute. *Morgan*, 356 Or at 372. An affected interest *may* be legally recognized by the very statute at issue in the declaratory judgment action, but it also may be legally recognized by other sources. In this case, plaintiff lacked standing to seek a declaration about the meaning of Oregon's social gaming statutes because it failed to assert or sufficiently develop an argument that its interest in the interpretation of those statues is an interest that is legally recognized by any source.[10]

---

compensation laws that burdened the trade association's members. The Court of Appeals concluded that, insofar as the defendant cooperative's avoidance of workers' compensation insurance costs had allowed it to underbid the trade association's members on reforestation contracts, the trade association had a "right, status, or other legal relation" that was affected by the workers' compensation laws and, thus, it had standing to bring the declaratory judgment action. 59 Or App at 351-52. In *Thunderbird Motel*, the Court of Appeals held that a hotel's interest in preventing a newly constructed competitor hotel from enjoying special advantages conveyed to it in a contract with the City of Portland was one that would support the hotel's standing to seek a declaration that the contract with the city violated Article XI, section 9, of the Oregon Constitution. 40 Or App at 700-03. Those cases do not assist plaintiff here, because the interest that plaintiff asserts is essentially anti-competitive.

[10] Plaintiff obliquely suggests that, in any event, it has standing to seek a somewhat different declaration—that plaintiff may apply for and obtain a permit from the city to operate a card room in Portland on the same terms that city social gaming permittees have been operating. However, as described above,

The judgment of the trial court and the decision of the Court of Appeals are affirmed.

---

plaintiff did not include a prayer for that declaration in its original complaint, but moved for permission to add it in an amended complaint, which motion the trial court denied. In the absence of any argument that the trial court's denial of the motion to amend was an abuse of discretion, we will not consider that issue and, thus, have no reason to consider whether plaintiff's alternative prayer for relief provided a basis for standing.