Before we consider whether these particular plaintiffs have standing to bring the declaratory judgment action that is before us, we describe the relevant analytical framework. Whether a plaintiff has standing to bring a particular kind of action "largely depends on the statute under which the plaintiff seeks relief." MT & M Gaming, Inc. v. City of Portland , 360 Or. 544, 553, 383 P.3d 800 (2016). Here, plaintiffs seek declaratory relief under ORS 28.020, which provides:
"Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."
In MT & M Gaming , this court identified three showings that must be made by a plaintiff who seeks declaratory **563 relief under that statute. 360 Or. at 554-55, 383 P.3d 800. First, ORS 28.020 requires that a plaintiff show that he or she is a "person" and that he or she has some "right, status or other legal relation" that is affected by the challenged provision. The term "right, status or other legal relation" in ORS 28.020 encompasses any "interest," as long as it is one that is "legally recognized"-that is, recognized under some statute, constitutional provision, regulation, local ordinance, or historical or evolving principle of common law. Id. at 554, 562-63, 383 P.3d 800. When a plaintiff's interest is not a "right, status or other legal relation," but, instead, is "an abstract interest in the correct application or the validity of a law," the plaintiff does not have standing under ORS 28.020. Morgan v. Sisters School District #6 , 353 Or. 189, 195, 301 P.3d 419 (2013).
Second, ORS 28.020 requires a showing that the identified rights, status, or other legal relations are "affected" by the targeted statute or provision. This court has held that the effect of the targeted statute or provision "must be real or probable, not hypothetical or speculative." Morgan , 353 Or. at 195, 301 P.3d 419. Although that requirement is more closely tied to general notions of justiciability *224 than to the wording of ORS 28.020,[2] it nonetheless has been treated as part of the standing analysis. MT & M Gaming , 360 Or. at 555, 383 P.3d 800.
A third requirement, when deciding whether declaratory relief is available, and similarly tied to general principles of justiciability, is that "the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate * * *[, i.e. , t]he relief that the plaintiff seeks, if granted, must redress the injury that is the subject of the declaratory judgment action." Morgan , 353 Or. at 197, 301 P.3d 419.
With those principles in mind, we turn to the question of whether any or all of the three named plaintiffs had standing to bring the declaratory judgment action at issue. Here, there are two theories of standing on offer.
**564 The first theory, advanced by the circuit court but not by plaintiffs themselves, is that Foote, Elledge, and Mapes-Stice all had standing as electors who had voted for Measure 57 (which was approved by the voters and, prior to its amendment by the legislature, provided certain presumptive sentences for persons convicted of certain property crimes) and Measure 10 (i.e. , Article IV, section 33, which provides that the legislature must obtain a two-thirds majority to pass a bill that reduces any sentence that was approved by the voters). As noted above, 364 Or. at 561, 437 P.3d at 222-23, the circuit court concluded that plaintiffs had standing because, when the legislature enacted H.B. 3078, thereby amending ORS 137.717 (2015) and reducing the sentences for certain property crimes, all three plaintiffs, as voters, were "deprived" of "benefits": (1) the "safety" that comes from longer prison sentences, to which they were entitled under Measure 57; and (2) "enhanced protection from governmental process" to which they were entitled under Article IV, § 33 (Measure 10). The circuit court likened those deprivations to those that the Court of Appeals found to exist, in deParrie v. State of Oregon , 133 Or. App. 613, 893 P.2d 541 (1995), for residents and electors of two cities whose ordinances prohibiting any grant of "special rights" on the basis of sexual orientation had been nullified by a state statute prohibiting enactment and enforcement of such ordinances. The circuit court explained that, in deParrie , the Court of Appeals had recognized that electors of the two cities had standing to seek a declaration invalidating the state statute because it had deprived them of the benefits of their own ordinance. The circuit court suggested that voter-plaintiffs in the present case were likewise being deprived of the benefits of statutory and constitutional provisions that they had supported and in which they had a legally recognized interest: Plaintiffs' standing thus rested, in the circuit court's view, on the idea that H.B. 3078 deprived them of benefits conferred by Measure 57 and Article IV, section 33 (Measure 10).
The cited case, deParrie , is not binding on this court, and we need not decide whether we agree with its holding. In deParrie , the Court of Appeals concluded that, by virtue of the fact that they lived in cities whose local ordinances had been or would be nullified by the targeted **565 statute, the voter-plaintiffs had an interest-other than an abstract interest in the correct application of the law-that was affected by the statute. Here, plaintiffs do not assert any interest that is even arguably distinct from the abstract interest in the correct application or the validity of a law that any other voter in the state might have. As persons who voted for Measure 57, plaintiffs may have a stronger desire to oppose H.B. 3078 than other citizens, in order to maintain the longer sentences prescribed in the measure, but strong feelings are not relevant in this context. Cf. Eacret et ux. v. Holmes , 215 Or. 121, 124-25, 333 P.2d 741 (1958) (parents of murdered man may have stronger feelings about death penalty for murderers than other members of the general public, but the constitutional provision providing governor with power to commute death sentences does not affect them differently *225 from other citizens, such that they would have standing to seek declaration limiting governor's exercise of that power). What is relevant is whether the amendment of ORS 137.717 (2015) in H.B. 3078 had an actual effect on a "legally recognized" interest of plaintiffs as voters. It did not.
The second theory of standing, which the circuit court rejected but which plaintiffs nevertheless advance in this court, pertains only to plaintiff Foote. Plaintiffs assert that Foote, in his official capacity as the district attorney of Clackamas County, has standing to seek a declaration that H.B. 3078 is invalid. Plaintiffs explain that, as a district attorney, Foote is charged by statute and under the Oregon Constitution with prosecuting crimes within his county. ORS 8.660 (district attorney shall conduct on behalf of the state all prosecutions of public offenses within the district attorney's county). Plaintiffs suggest that a duty to make sentencing recommendations in accordance with the relevant criminal statutes (including H.B. 3078) is subsumed within that charge. Plaintiffs also observe that Foote has a sworn duty as a district attorney to uphold the state and federal constitutions, including by using his discretion in making sentencing recommendations in a way that is constitutionally sound. Plaintiffs contend that, insofar as Foote is aware that a conflict exists between those two obligations with respect to the presumptive sentences set out in H.B. 3078, **566 he suffers from "uncertainty" about where his duty lies. In plaintiffs' view, the fact that, as a result of H.B. 3078, Foote is "affected by" that uncertainty gives him standing to seek a judicial declaration as to that statute's validity.
The state contends, however, that that "uncertainty" theory, as a basis for standing under ORS 28.020, was squarely rejected in Gortmaker , 252 Or. 440, 450 P.2d 547. In Gortmaker , a district attorney sought declaratory relief under ORS 28.020 regarding the meaning of certain drug statutes, claiming to be in "doubt" as to their meaning and arguing that he had a substantial interest that was affected by the statutes because he could be sued if he prosecuted someone based on an incorrect understanding of their meaning. Id. at 442, 450 P.2d 547. This court rejected that argument, explaining that
"[a]ny district attorney in the state can make the same assertion about any criminal law on the books. These allegations are mere conclusions, highly speculative, hypothetical, and, as statements of law, open to serious question."
Id . at 443, 450 P.2d 547. Thus, we concluded, the district attorney was "not a party whose rights, within the meaning of ORS 28.020, could be affected by judicial construction of the drug statutes." Id. at 442, 450 P.2d 547.
Rather than directly confronting that argument, plaintiffs respond by pointing to another declaratory judgment case, Brown v. Oregon State Bar , 293 Or. 446, 648 P.2d 1289 (1982), which was decided some 13 years after Gortmaker . In Brown , this court considered the justiciability of an action by the Attorney General seeking a declaration, under ORS 28.020, regarding his duty to provide legal advice to state agencies that engaged in contested case proceedings. The issue arose after two assistant attorneys general, at the request of the director of the Land Conservation and Development Commission (LCDC), met with the director and an LCDC hearings officer regarding a contested case that was before the commission, and did so without the participation of or notice to the litigants. The hearings officer was uncomfortable about the ex parte meeting and filed a complaint with the Oregon State Bar (Bar). After taking the complaint under advisement, the Bar asked the Attorney General to weigh in on the question of whether the described **567 conduct was within the authority of the Attorney General's office. The Attorney General issued an opinion that concluded that, in a contested case proceeding before a governmental agency's hearings officer, the Attorney General has a statutory duty to give advice, when requested, to the agency and its hearings officers, and may give such advice without the knowledge and participation of other parties-at least in certain specified circumstances. The Bar concluded, nonetheless, that an attorney general's ex parte meeting with an agency's hearings officer would violate the rules of professional conduct governing lawyers, and *226 it issued an advisory opinion to that effect. 293 Or. at 448-49, 648 P.2d 1289.
The Attorney General then sought a declaration under ORS 28.020 that his authority to give agencies involved in contested case proceedings advice upon request was as he had described it in his opinion and that any conduct that fell within that authority would not violate the rules of professional conduct. The Bar moved for summary judgment, arguing, among other things, that the case was not justiciable "because it involve[d] only advisory ethics opinions [and did] not involve present facts." Id. at 450, 648 P.2d 1289. The trial court agreed with the Bar that the case was not justiciable and granted the Bar's motion for summary judgment. The Court of Appeals reversed, as did this court on review, holding that the question of the Attorney General's authority to advise agencies involved in contested cases was justiciable. Id. at 449, 648 P.2d 1289. We explained that,
"[w]hile the controversy arises from advisory opinions, the substance of the controversy concerns the interpretation of a statute. The court is requested to consider a specific set of facts-whether plaintiff may give advice upon request to agencies in contested cases where plaintiff's office is not involved in the case, agency rules do not prohibit the conduct and the recipient does not have authority to issue binding orders. The controversy involves present facts, the plaintiff's existing statutory duty."
Id. at 450, 648 P.2d 1289.
In the present case, plaintiffs read the foregoing explanation from Brown as a broadly applicable statement of law-that public officials may use declaratory judgment **568 actions to resolve their own uncertainties about the duties of their offices. And plaintiffs purport to find support for that reading of Brown in TVKO v. Howland , 335 Or. 527, 73 P.3d 905 (2003). In TVKO , this court described Brown as "stand[ing] for the unremarkable proposition that, when state officers seek judicial declarations regarding their duties, the statutory responsibilities of their office provide the present facts necessary for a justiciable controversy and, when such a controversy is present, a court only has limited discretion to decline to adjudicate it." Id. at 536, 73 P.3d 905. Notably, plaintiffs do not articulate how Brown , a case that, at least on its face, is about general notions of justiciability rather than standing, and TVKO , a case in which even general notions of justiciability are peripheral,[3] provide a rule of standing under ORS 28.020 that could be determinative here. They apparently see Brown as giving legal recognition to the interest that any public official would have in resolving uncertainty about where his or her duty lies, and Foote's asserted interest in certainty about the lawfulness of his sentencing recommendations as falling within that broad proposition. Carrying forward the analysis, plaintiffs' argument would be that Foote's "legally recognized" interest in certainty was "affected by" the enactment of H.B. 3078 and that he therefore has standing to seek declaratory relief.
If that is plaintiffs' point, it is not well taken. Even assuming that the general discussion of justiciability in Brown reasonably can be understood as a rule that is of assistance in determining the class of persons who have standing to bring declaratory judgment actions, the resulting rule would not be helpful to plaintiff Foote here. At best, Brown could be cited for the proposition that a public official who has taken a specific action that the official deems to be within his or her statutory authority and who intends to take similar action in the future, but whose action has **569 been challenged, subjecting the official to potential adverse consequences, has a legally recognized interest in knowing whether he or she has legal authority to act. The interest that plaintiffs ascribe to Foote in no way fits that description: Although plaintiffs couch their arguments in terms of Foote's "uncertainty" about his professional *227 duties, the asserted "uncertainty" is ultimately about an everyday question of criminal law-how a particular statute that may limit his sentencing recommendations should be interpreted. Nothing in Brown suggests that, for purposes of standing under ORS 28.020, a district attorney has a "legally recognized interest" in knowing the answer to such a question before testing it in the ordinary course of a prosecution.
And Gortmaker , on which the state relies, confirms that, for purposes of standing, the law does not recognize such an interest. As described above, Gortmaker held that a district attorney who was uncertain about the meaning of certain drug laws and the circumstances in which he could prosecute under them was not a party whose "rights, status, or other legal relation" had been "affected by" the laws within the meaning of ORS 28.020. Although the district attorney in Gortmaker did not articulate the specific claim of "duty" that plaintiffs claim for Foote in the present case, he held the same public office as Foote, and his circumstances were in every relevant sense the same as those of Foote in the present case. Yet this court held that he lacked standing to seek a declaration under ORS 28.020 regarding the statute that was causing him uncertainty. That holding appears to constitute a complete answer to the issue of Foote's standing, as a district attorney, to seek a declaration to resolve his uncertainty about H.B. 3078.
Plaintiffs argue, however, that Gortmaker is not controlling on the issue of standing because that case was not decided on the basis of standing. They insist that the decision in Gortmaker was driven primarily, if not solely, by concerns about the use of a declaratory judgment action to obtain an advisory opinion when the parties are not true adversaries. Accordingly, plaintiffs argue that the holding from Gortmaker that we have described-that a district attorney's interest in resolving personal doubts about the **570 meaning of a criminal statute is not one that can confer standing under ORS 28.020 -has no relevance where, as here, the parties take opposing positions.
We disagree with plaintiffs' characterization of Gortmaker . Although it is true that that case includes a discussion of whether the proceeding was sufficiently adversarial, nothing in the opinion suggests that the court's analysis of standing was subordinate to that issue of adversity. In fact, the opinion succinctly and separately addresses the issue of standing, first stating that, to bring a declaratory judgment action, the plaintiff must allege a "substantial interest" in the matter, then explaining that the district attorney's allegations did not satisfy that requirement, and finally stating-in a clear and separate holding-that the facts that the district attorney had alleged did not give him standing to bring his action. Gortmaker , 252 Or. at 443, 450 P.2d 547.
Plaintiffs argue that, in any event, the "substantial interest" requirement stated in Gortmaker has been relaxed in a way that supports a conclusion that District Attorney Foote had standing to bring the present action under ORS 28.010. They point to MT & M Gaming , 360 Or. at 564-65, 383 P.3d 800, in which this court recognized that, to establish standing to seek a declaration about a statute's validity, meaning, or effect, a plaintiff need only show that he or she has an interest that is recognized by some source of law-and need not show that the targeted statute itself is the source of the legally recognized interest. Plaintiffs contend that, under that more relaxed standard, Foote's "dut[y] to enforce the criminal laws while also supporting the constitution's limitations on enacting them" constitutes a legally recognized interest that supports standing.
Plaintiffs' appeal to MT & M Gaming is inapt for a number of reasons. First, they are wrong to suggest that MT & M Gaming reflects a relaxation of the "substantial interest" standing requirement as stated and applied in Gortmaker. The court in MT & M Gaming was presented with a theory that, to establish standing to seek a declaration under ORS 28.020 regarding the meaning or validity of a law, a plaintiff must be "subject to" the law or at least **571 be within the "zone of interests" that the law seeks to protect. 360 Or. at 546-47, 383 P.3d 800. After examining the cases cited by the parties, the court concluded that that theory, although prevalent in federal standing analysis, had not *228 been incorporated into Oregon law either as a general standing rule or as a requirement particular to the declaratory judgment act. 360 Or. at 561-65, 383 P.3d 800. The clear implication of that holding is that Oregon never has had a rule limiting standing in declaratory judgment actions to plaintiffs who are "subject to" the statute at issue. Accordingly, MT & M Gaming could not have eliminated or relaxed such a rule.
To the extent that plaintiffs are suggesting that Gortmaker itself was decided on the basis of the type of rule that MT & M Gaming rejected, they are mistaken. In the single paragraph of Gortmaker that discusses the standing issue, there is nothing that indicates any concern with whether the district attorney's asserted interest was within the zone of interests that the laws at issue sought to protect. The court simply concluded that a district attorney's interest in avoiding erroneous prosecutorial decisions and the potential consequences thereof was insufficiently distinct. See 252 Or. at 443, 450 P.2d 547 ("Any district attorney in the state can make the same assertion about any criminal law on the books.").
We conclude that Gortmaker remains good law and that it controls the resolution of plaintiffs' claim that Foote has standing to bring this action in his capacity as the district attorney for Clackamas County. Foote lacks standing as a district attorney to seeks a declaration regarding the validity of H.B. 3078 for the same reason that the district attorney in Gortmaker lacked standing to seek a declaration regarding the meaning of certain criminal laws: Foote's asserted interest in certainty about his prosecutorial duties with respect to the effect of a criminal statute is not an interest that can confer standing under ORS 28.020.
Plaintiffs have not established that they have standing to bring the present declaratory judgment action. The circuit court's conclusion that plaintiffs did have standing was in error. Because the circuit court should have dismissed the action rather than deciding it on its merits, its decision on the merits must be vacated.
**572 The judgment of the circuit court is vacated, and the case is remanded to the circuit court to dismiss the complaint.

See, e.g. , Brown v. Oregon State Bar , 293 Or. 446, 449, 648 P.2d 1289 (1982) (for court to entertain action for declaratory relief, the complaint must present a justiciable controversy, meaning, among other things, that "the controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue.").

TVKO ultimately was a challenge to the scope of a declaratory judgment issued by the Oregon Tax Court and only tangentially dealt with the justiciability issue decided in Brown . See 335 Or. at 530-38, 73 P.3d 905 (discussing justiciability of declaratory judgment action that seeks interpretation of statute setting out public official's duties in the broader context of an argument about whether, when a plaintiff brings what is in effect a facial challenge to a statute under ORS 28.020, the court must issue a declaratory judgment that is comparably broad in scope).