Argued and submitted November 19, 2019, affirmed August 11, 2021

OREGON RESTAURANT AND
LODGING ASSOCIATION,
an Oregon nonprofit corporation;
BHG Bend, LLC,
an Oregon limited liability company;
and Wall Street Suites, LLC,
an Oregon limited liability company,
*Plaintiffs-Respondents,*

*v.*

CITY OF BEND,
an Oregon municipality,
*Defendant-Appellant.*

Deschutes County Circuit Court
17CV41968; A168283

497 P3d 306

In this declaratory judgment action, plaintiffs Oregon Restaurant and Lodging Association and two hotel owners, BHG Bend, LLC and Wall Street Suites, LLC, sought declaratory, injunctive, and equitable relief after the City of Bend adopted an ordinance that amended its local transient lodging tax revenues. On cross-motions for summary judgment, the trial court granted plaintiffs' motion and denied the city's motion, concluding that the ordinance violated ORS 320.350. The city appeals, arguing that the trial court erred in granting plaintiffs' summary judgment motion because (1) plaintiffs do not have standing to pursue a declaratory judgment action and (2) the city's ordinance complies with ORS 320.350. *Held*: The trial court did not err in concluding that plaintiffs had standing to bring a declaratory judgment action. Plaintiffs sufficiently alleged that the reduction in funds for tourism promotion would adversely affect their legally cognizable interests. Further, because the plain text of ORS 320.350(3) preserves the percentage of transient lodging tax revenues dedicated to promoting tourism that was in place or agreed to as of July 1, 2003, the challenged ordinance violated ORS 320.350 by decreasing the percentage of total local transient lodging tax revenues expended to fund tourism promotion from 35.4 percent to 31.2 percent.

Affirmed.

Beth M. Bagley, Judge.

Ian M. Leitheiser argued the cause for appellant. Also on the brief was Mary A. Winters.

Josh Newton filed the brief for respondents. Also on the briefs was Karnopp Petersen LLP.

Before Lagesen, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this declaratory judgment action, plaintiffs Oregon Restaurant and Lodging Association (ORLA) and two hotel owners, BHG Bend, LLC (BHG) and Wall Street Suites, LLC (Wall Street Suites), sought declaratory, injunctive, and equitable relief after the City of Bend adopted an ordinance that amended its local tax on transient lodging. On cross-motions for summary judgment, the trial court granted plaintiffs' motion and denied the city's motion, concluding that the ordinance violated ORS 320.350, which prohibits local governments from decreasing the percentage of total local transient lodging tax revenues under specified circumstances. The court reasoned that the ordinance violated ORS 320.350 by decreasing the percentage of total local transient lodging tax revenues that were expended to fund tourism promotion from 35.4 percent to 31.2 percent. The city appeals, arguing that the trial court erred in granting plaintiffs' summary judgment motion because (1) plaintiffs do not have standing to pursue a declaratory judgment action and (2) the city's ordinance complies with ORS 320.350. For the reasons explained below, we affirm.

In an appeal arising from cross-motions for summary judgment, the granting of one motion for summary judgment and the denial of the other are both reviewable. *Butler Family LP v. Butler Brothers, LLC*, 283 Or App 456, 462, 388 P3d 1135 (2017). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to prevail as a matter of law. ORCP 47 C. We review the summary judgment record in the light most favorable to the nonmoving party and draw all reasonable inferences in their favor. *Butler Family LP*, 283 Or App at 463.

The relevant facts are undisputed. In 1983, the city enacted ordinance NS-1375, which imposed a six percent transient lodging tax (or room tax) on rents paid for temporary lodging within the city. In 2001, the city enacted ordinance NS-1813, which phased in increases to the transient lodging tax beginning January 1, 2002, until the city reached nine percent. The ordinance also required the city to phase in increases of the percentage of the tax revenues

expended on tourism promotion by 1.2 percent until the city reached 30 percent. Ordinance NS-1813 "reflected compromises and negotiations" between the city and the local lodging industry.

In 2003, the legislature enacted ORS 320.350, which regulates lodging taxes statewide. Pertinent to this case, ORS 320.350(3) provides:

> "A unit of local government that imposed a local transient lodging tax on July 1, 2003, may not decrease the percentage of total local transient lodging tax revenues that are actually expended to fund tourism promotion or tourism-related facilities on or after July 2, 2003. A unit of local government that agreed, on or before July 1, 2003, to increase the percentage of total local transient lodging tax revenues that are to be expended to fund tourism promotion or tourism-related facilities, must increase the percentage as agreed."

In 2013, Bend residents approved Measure 9-94, which authorized a phased increase of the city's room tax rate from nine percent to 10.4 percent. Implementation of Measure 9-94 resulted in the tourism expenditure rate increasing to 35.4 percent. The city codified Measure 9-94 in Bend Code 12.05.080, which provided, in part:

> "Thirty percent of the proceeds from a room tax rate of nine percent and 70 percent of the proceeds from any increment above a nine percent rate received by the City shall be * * * used for tourism promotion."

In 2017, the city enacted ordinance NS-2291—which is the ordinance challenged in this case—that amended Bend Code 12.05.080 by reducing the total tourism promotion expenditure rate from 35.4 percent to 31.2 percent.[1] The challenged ordinance also decreased the expenditure rate by reducing the percentage of funds allocated to tourism promotion from the first room tax increment of nine percent that was established in 2001.

Shortly thereafter, plaintiffs commenced this declaratory action against the city seeking a declaration that ordinance NS-2291 violated ORS 320.350, an injunction

---

[1] The full text of ordinance NS-2291 is attached as an Appendix.

enjoining the city from enforcing ordinance NS-2291, and an order mandating the city to expend its room tax revenues in accordance with ORS 320.350. Plaintiffs and the city each moved for summary judgment.

Plaintiffs argued in their motion for summary judgment that ordinance NS-2291 violated ORS 320.350 for two reasons: (1) "it effectuates a reduction in the Tourism Expenditure Rate agreed to before July 1, 2003, on or after July 2, 2003," and (2) "it reduces the Tourism Expenditure Rate with respect to the first nine percent (9%) increment of the [transient lodging tax] from the agreed-upon level, despite the requirement to increase the Tourism Expenditure rate as agreed." Plaintiffs argued that the text, context, and legislative history of ORS 320.350 support their position that "local governments must raise Tourism Expenditure Rates as they agreed and must forbear from decreases to those rates."

In response, the city argued that plaintiffs did not have standing to seek a declaratory judgment. In particular, the city contended that plaintiffs had established neither how they were harmed by the city's decision "to allocate a lesser percentage of room tax revenue to tourism promotion," nor how ordinance NS-2291 affected their rights, status, or other legal relations. The city also disagreed with plaintiffs' interpretation of ORS 320.350. The city asserted that, although ORS 320.350(3) provides that the percentage of total lodging tax revenue allocated to tourism may not decrease below the percentage actually expended on July 1, 2003, the statute does not provide that the percentage of local lodging tax revenue allocated to tourism "may never decrease at all, in any amount." According to the city's argument, because the percentage allocated to tourism has been above 30 percent since 2003, ordinance NS-2291 complies with the requirements in ORS 320.350(3).

After a hearing on the motions, the trial court granted plaintiffs' motion for summary judgment. With respect to plaintiffs' standing, the court concluded:

"Plaintiffs have demonstrated their rights, status, or other legal relations are affected by the statute, and the three-part criteria set forth in *Doyle v. City of Medford*[,

356 Or 336, 337 P3d 797 (2014),] cited by plaintiffs have been satisfied."

On the merits, after considering the text, context, and legislative history of ORS 320.350, the court determined that ordinance NS-2291 violated the statute "by decreasing the percentage of total local transient lodging tax revenues that are actually expended to fund tourism promotion from 35.4 percent to 31.2 percent." The court interpreted ORS 320.350 "to require the City [to] expend no less than 35.4 percent of total [transient lodging tax] revenue on tourism," and determined that ORS 320.350(3) required a "minimum threshold expenditure rate of no less than 30 percent" of transient lodging tax revenue "from the first 9 percent of [transient lodging tax] that was agreed to prior to" July 1, 2003. The city timely initiated this appeal.

On appeal, the parties largely renew the arguments that they made before the trial court. First, the city reasserts that plaintiffs lack standing to bring this declaratory judgment action. Specifically, the city contends that the trial court erred in concluding that plaintiffs satisfied the second consideration of the standing analysis, which requires the presence of a real and probable injury, not a hypothetical or speculative one. Second, the city renews its argument that ordinance NS-2291 complies with ORS 320.350 because, although the ordinance reduced the total room tax revenue for tourism promotion from 35.4 percent to 31.2 percent, the overall percentage allocated to tourism remains above the 30 percent baseline amount established in 2003.

We begin by addressing the city's standing argument. Whether a plaintiff has standing to bring a declaratory judgment action is a legal question, which we review for legal error. *Thunderbird Mobile Club v. City of Wilsonville*, 234 Or App 457, 465, 228 P3d 650, *rev den*, 348 Or 524 (2010). Under the Uniform Declaratory Judgments Act,

"[a]ny person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument,

constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

ORS 28.020. As the Supreme Court has explained, "to have standing to seek a declaration with respect to a statute, a plaintiff must show that it has a legally recognized interest that is adversely affected by the statute." *MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 566, 383 P3d 800 (2016) (internal quotation marks omitted). Three considerations are relevant to whether there is a legally recognized interest that is adversely affected by a statute or ordinance. Specifically, the plaintiff must (1) "establish that the challenged law causes 'some injury to or impact upon a legally recognized interest of the plaintiff's, beyond an abstract interest'" in the correct application of the law; (2) "show that the claimed injury or impact is real or probable, not hypothetical or speculative"; and (3) "show that a decision by the court will in some sense rectify the injury, *i.e.*, that it will have a 'practical effect on the rights that the plaintiff is seeking to vindicate.'" *Id.* at 554-55 (quoting *Morgan v. Sisters School District #6*, 353 Or 189, 195-97, 301 P3d 419 (2013)). Ultimately, standing to challenge a statute under the Uniform Declaratory Judgments Act extends to all who allege and demonstrate a legally recognized interest affected by the statute or ordinance. *MT & M Gaming, Inc.*, 360 Or at 566.

On appeal, the city's challenge to the trial court's ruling on standing is narrow. The city does not dispute the ruling as to the first consideration related to some injury to, or impact upon, a legally recognized interest, and the city does not challenge the court's determination on the third consideration related to a showing that a decision by the court will have a practical effect on the plaintiffs' rights that they seek to vindicate. Instead, the city challenges only the second standing consideration, *viz.*, whether plaintiffs have shown that their injury or impact is real or probable, and not hypothetical or speculative.

Plaintiffs are three entities who depend on tourism in Bend: ORLA is a trade organization for the foodservice and lodging industry in Oregon, and BHG and Wall

Street Suites own hotels in Bend. In their complaint, ORLA alleged:

> "Ordinance NS-2291 affects ORLA's legally recognized interest in promoting the common business interests of its members located in Bend because it improperly diverts the City's room tax revenues from tourism promotion in violation of state law. ORLA's alleged harm is real and probable, because ORLA anticipates that the City will implement (or has implemented) Ordinance NS-2291 and reduce its funding of tourism promotion."

BHG and Wall Street Suites set out similar allegations:

> "As hotel owners in Bend, BHG Bend and Wall Street Suites have a pecuniary interest in the promotion and increase of tourism in Bend. Ordinance NS-2291 improperly diverts the City's room tax revenues from tourism promotion in violation of state law, decreasing the amount spent on tourism promotion and which could negatively affect patronage of BHG Bend's and Wall Street Suites' hotels. BHG Bend's and Wall Street Suites' harm is real and probable, because BHG Bend and Wall Street Suites anticipate that the City will implement (or has implemented) Ordinance NS-2291 and reduce its funding of tourism promotion."

Although the city does not dispute that ordinance NS-2291 reduces funding allocated for tourism promotion, it nonetheless asserts that plaintiffs have not demonstrated that their injury is real or probable. We disagree.

BHG and Wall Street Suites plaintiffs have sufficiently alleged how—as businesses that depend on patronage in Bend—the reduction in funds for tourism promotion would have concrete and plausible fiscal ramifications. *See League of Oregon Cities v. State of Oregon*, 334 Or 645, 659-61, 56 P3d 892 (2002) (concluding that some of the plaintiffs had standing based on allegations that their land values and other financial interests were affected indirectly). Similarly, ORLA represents the interests of businesses, like BHG and Wall Street Suites, that—despite any direct application of the ordinance—sufficiently alleged that the reduction in funding for tourism promotion would adversely affect their "legally cognizable interests." *See MT & M Gaming*, 360 Or at 557-58 (explaining that *League of Oregon Cities* "shows that a plaintiff whose interests do fall generally within the

intended objectives of the targeted statute has standing to bring a declaratory judgment [action] with regard to the statute" (emphasis omitted)). Accordingly, the trial court did not err in concluding that plaintiffs have standing to bring a declaratory judgment action.

Having resolved whether plaintiffs have standing, we turn to whether ordinance NS-2291 violates ORS 320.350. After examining the text, context, and pertinent legislative history of ORS 320.350 using the methodology described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we conclude that the plain text of ORS 320.350(3) preserves the percentage of transient lodging tax revenues dedicated to promoting tourism that was in place or agreed to as of July 1, 2003.

As noted above, ORS 320.350(3) provides:

"A unit of local government that imposed a local transient lodging tax on July 1, 2003, may not decrease the percentage of total local transient lodging tax revenues that are actually expended to fund tourism promotion or tourism-related facilities on or after July 2, 2003. A unit of local government that agreed, on or before July 1, 2003, to increase the percentage of total local transient lodging tax revenues that are to be expended to fund tourism promotion or tourism-related facilities, must increase the percentage as agreed."

In this case, the city enacted ordinance NS-1813 in 2001. That ordinance mandated increases in the transient lodging tax to begin on January 1, 2002, until the city reached a nine percent tax rate. The ordinance also required the city to phase in increases of the percentage of transient lodging tax revenue expended on tourism promotion by 1.2 percent per year until the city reached a 30 percent rate of expenditure on tourism promotion. Therefore, because the city had a transient lodging tax in place on July 1, 2003, the city "may not decrease the percentage of total local transient lodging tax revenues that are actually expended to fund tourism promotion or tourism-related facilities on or after July 2, 2003." ORS 320.350(3).

The city nonetheless asserts that the first sentence of ORS 320.350(3) establishes a "minimum allocation

threshold" that remains "fixed even as other things change." As we understand the city's argument, because the city had a preexisting commitment to increase the percentage of tax revenue for tourism to 30 percent on July 1, 2003, then as long as the total percentage of tax revenue for tourism does not fall below 30 percent, ordinance NS-2291 does not violate ORS 320.350(3). That interpretation, however, ignores the unambiguous prohibition on a local body of government from decreasing the percentage of total tax revenue expended on tourism promotion "on or after July 2, 2003." Stated differently, a local government with a transitory lodging tax in place on July 1, 2003, may not—after July 2, 2003—decrease the percentage of tax revenue expended to promote tourism. Because ordinance NS-2291 decreased the total tax revenue for tourism promotion from 35.4 percent to 31.2 percent, the ordinance violates ORS 320.350(3).

ORS 320.350(5) and ORS 320.350(6) further reinforce our interpretation of ORS 320.350(3). ORS 320.350(5) and (6) specifically outline when a new transient lodging tax or an increase to an existing transient lodging tax can be imposed:

"(5)   Subsections (1) and (2) of this section do not apply to a new or increased local transient lodging tax if all of the net revenue from the new or increased tax, following reductions attributed to collection reimbursement charges, is used consistently with subsection (6) of this section to:

"(a)   Fund tourism promotion or tourism-related facilities;

"(b)   Fund city or county services; or

"(c)   Finance or refinance the debt of tourism-related facilities and pay reasonable administrative costs incurred in financing or refinancing that debt, provided that:

"(A)   The net revenue may be used for administrative costs only if the unit of local government provides a collection of reimbursement charge; and

"(B)   Upon retirement of the debt, the unit of local government reduced the tax by the amount by which the tax was increased to finance or refinance the debt.

"(6)   At least 70 percent of net revenue from a new or increased local transient lodging tax shall be used for the

purposes described in subsection (5)(a) or (c) of this section. No more than 30 percent of net revenue from a new or increased local transient lodging tax may be used for the purpose described in subsection (5)(b) of this section.”

ORS 320.350(5) and (6) do not disturb the mandates outlined in ORS 320.350(3). Moreover, when read in context with ORS 320.350(3), ORS 320.350(6) would not be effective if a local government was permitted to offset the amounts required to be dedicated to tourism promotion by reducing the total percentage of the existing transient lodging tax that is dedicated to tourism promotion. *See* ORS 174.010 (“In the construction of a statute, \*\*\* where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.”).

We conclude that the text of ORS 320.350(3) is unambiguous, and even more so when viewed in context. *See White v. Jubitz Corp.*, 347 Or 212, 223, 219 P3d 566 (2009) (noting that “legislative history cannot substitute for, or contradict the text of,” a statute). In any event, we note that our review of the legislative history confirms our understanding of ORS 320.350 as described above.

Accordingly, the trial court did not err in granting plaintiffs’ motion for summary judgment and in denying the city’s motion.

Affirmed.

# APPENDIX

**ORDINANCE NS- 2291**

**AN ORDINANCE AMENDING THE BEND CODE 12.05.080 REGARDING ADMINISTRATION OF ROOM TAX REVENUES**

Findings:

A.      In 2001, the Bend City Council considered an increase to the City's room tax, which was then 7%. The 7% rate had been in effect since 1987.

B.      After a majority of the Council approved an increase to a rate of 9%, discussions later in 2001 including the City and members of the local lodging industry led to an agreement to increase the percentage of total room tax revenues allocated to tourism promotion over time until it reached 30% of total room tax revenues. The City proceeded with the increase to a 9% rate.

C.      In 2003, the state Legislature passed HB 2267, which established a state transient lodging tax and placed some restrictions on local lodging taxes, including the City's room tax. Among other things, the bill provided that as of July 2, 2003, at least 70% of any new or increased local lodging taxes must be directed to tourism promotion or tourism related facilities. The bill did not restrict the remaining 30% of any new or increased local lodging taxes.

D.      On July 2, 2003, the operative date in HB 2267 and the resulting statute, ORS 320.350, the City spent 25.2% of its total room tax revenues on tourism promotion.

E.      The City increased the percentage of total room tax revenues expended on tourism promotion until the allocation reached 30% of total room tax revenues, as agreed.

F.      Among the restrictions it imposed, HB 2267 required local governments to maintain the percentage of total local lodging tax revenues actually expended on tourism promotion or tourism related facilities from July 2, 2003 forward. The Legislature also included a provision that appeared to be directed at the City of Bend, requiring cities that had agreed to increase the percentage of total local transient lodging tax revenues to be expended on tourism to increase the percentage as agreed. As noted above, the City did so, increasing the percentage as agreed until the allocation to tourism reached 30%.

G.      In the November 2013 general election, City voters approved Measure 9-94, an increase in the City's room tax rate from 9% to 10.4%. Of the new 1.4% rate increment, state law requires 70% be allocated to tourism promotion or tourism related facilities. The remaining 30%, while not restricted by state law, is devoted to police and fire services under the terms of the measure approved by the voters.

H.    The City currently expends 35.4% of total room tax revenues on tourism promotion. This percentage is a result of blending the allocation devoted to tourism between the two existing rate increments of the City's room tax: 30% of the first 9% rate, and 70% of the rate increment above 9%.

I.    A decrease of the tourism allocation to 31.2% of total room tax revenues is consistent with both HB 2267 and the 2001 agreement to increase the tourism allocation to 30% of total room tax revenues.

J.    The code change resulting in a decreased allocation of total room tax revenues to tourism would provide additional general fund flexibility, whether for street maintenance or other purposes.

Based on these findings, the City of Bend ordains as follows:

**Section 1.**    Bend Code 12.05.080 is amended to read as shown in Exhibit A.

**Section 2.**    All other provisions of the Bend Code remain unchanged and in full effect.

First Reading Date: April 19, 2017

Second Reading Date: May 3, 2017

Adopted by roll call vote on: May 3, 2017

YES:  Casey Roats, Mayor          NO:    NONE
      Sally Russell
      Bill Moseley
      Bruce Abernethy
      Justin Livingston
      Nathan Boddie

_____
Casey Roats, Mayor          Date

ATTEST:

_____
Robyn Christie, City of Bend Recorder

_____
Mary Winters, City Attorney

**12.05.080   Administration.**

A.     Use of Room Tax Funds. ~~Thirty percent of the proceeds from a room tax rate of nine percent and 70 percent of the proceeds from any increment above a nine percent rate received by the City shall be paid into the Tourism Fund and~~ 31.2% of total room tax revenues will be used for tourism promotion. The City may enter into contracts with ~~the Visit Bend, the Central Oregon Visitors Association or other~~ any entit~~y~~ies for tourism promotion. ~~Seventy percent of the proceeds from a room tax rate of nine percent may be used for any purpose consistent with State law.~~ Thirty percent of room tax ~~proceeds~~ revenues received by the City based on any increment of tax ~~above~~ between a nine percent tax rate and a 10.4% tax rate shall be used for police and fire services.

B.     Records Required from Operators. Every operator shall keep records of each transaction involving rent and/or collection of tax. All records shall be retained for at least three years and six months.

C.     Examination of Records – Investigations. The Tax Administrator or agent may examine all records of an operator relating to receipt of rent and tax and remittance of tax during normal business hours and may obtain copies of the records to audit returns.

D.     Confidential Character of Information Obtained – Disclosure Unlawful. The City shall maintain the confidentiality of information provided by operators. Nothing in this subsection shall be construed to prevent:

   1.     The disclosure to, or the examination of records and equipment by, another City official, employee or agent for collection of taxes for the purpose of administering or enforcing any provisions of this chapter or collecting City business license fees.

   2.     Disclosure of information to the operator and the operator's agents.

   3.     The disclosure of the names and addresses of any persons to whom Certificates of Authority have been issued.

   4.     The disclosure of general statistics regarding taxes collected or business done in the City.

   5.     Disclosures required by ORS Chapter 192. [Ord. NS-2218, 2014; Ord. NS-2163, 2011]