No. 429　　　　　May 20, 2026　　　　　657

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JEWELL SCHOOL DISTRICT,
*Plaintiff-Appellant,*

*v.*

Kacey KC,
Oregon State Forester;
Mike Wilson, State Forest Division Chief;
and Department of Forestry,
*Defendants-Respondents.*

Clatsop County Circuit Court
24CV13514; A186539

Beau V. Peterson, Judge.

Argued and submitted March 18, 2026.

John A. DiLorenzo, Jr., argued the cause for appellant. Also on the briefs was Davis Wright Tremaine LLP.

Carson L. Whitehead, Assistant Attorney General, argued the case for respondents. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Deputy Attorney General.

Before Tookey, Presiding Judge, Jacquot, Judge, and Kistler, Senior Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

In this case concerning land designated as "state forests" under ORS 530.010, plaintiff, Jewell School District, a public school district located in Clatsop County, asserts that defendants, the Oregon Department of Forestry, the Oregon State Forester, and the State Forest Division Chief, have failed to comply with the Northwest Oregon State Forests Management Plan (the 2010 NWFMP). Specifically, plaintiff contends that defendants have failed to comply with one of the "Asset Management Guidelines" in the 2010 NWFMP, by failing to "[m]aintain a budgeting and financial management system that assures that revenues derived from these state forest lands are sufficient to cover the department's costs of implementing th[e] plan."

Plaintiff sought a declaratory judgment and accompanying injunctive relief, and the trial court dismissed plaintiff's complaint for lack of standing, determining that "the relief that this court could order would not necessarily provide real relief from the alleged injury." The trial court also denied plaintiff's motion to amend its complaint as futile.

On appeal, plaintiff raises two assignments of error. First, plaintiff asserts that the trial court erred when it dismissed plaintiff's complaint. Second, plaintiff contends that the trial court erred when it denied plaintiff's motion to file an amended complaint. We agree with plaintiff that the trial court erred when it dismissed plaintiff's complaint. That conclusion obviates the need to consider plaintiff's second assignment of error. We reverse and remand.

## I.  BACKGROUND

A.  *Historical Backdrop*

"Oregon counties and the state have a long history of cooperation in the management of Oregon's forestlands." *County of Linn v. State*, 319 Or App 288, 292, 510 P3d 962, *rev den*, 370 Or 214 (2022). Under the pertinent statutory scheme, ORS 530.010 to 530.181, Oregon counties are authorized "to convey land to the Board [of Forestry], and such land is then designated as state forest." *County of Linn*, 319 Or App at 292 (citing ORS 530.010); *see also Tillamook Co.*

*v. State Board of Forestry*, 302 Or 404, 407-09, 730 P2d 1214 (1986) (describing the statutory scheme). After such transfer, "the state bears certain management responsibilities for that land, and the state and the county that conveyed the land to the state divide revenues derived from that land under a statutory distribution formula." *County of Linn*, 319 Or App at 293; *see also* ORS 530.050 (setting forth management responsibilities of the State Forester); ORS 530.110 (setting forth distribution formula for revenue derived from state forest land acquired from counties).

Under the statutory distribution formula, revenue generated from management of the state forests is split between the county within which the revenue was generated and the state. ORS 530.110. The parties agree that, at least as a general matter, ultimately, the state retains a total of 36.25 percent of the revenue, and the remainder—63.75 percent of the revenue—is paid to the county. *See* ORS 530.110. Of the 63.75 percent that is paid to the county, 25 percent is "credited and paid into the county school fund," not less than 10 percent goes to "the county general fund," and the remainder is "prorated and apportioned to the various taxing districts in which the lands [that generated the revenue] are situated." ORS 530.115.

The "statutory plan" described above "contemplates consensual dealings between the counties and the state (through the Board of Forestry), dealings that would create enforceable rights insofar as the state's management of formerly county owned forest land is concerned." *Tillamook County*, 302 Or at 416. We have recognized that counties that have transferred land to the state under the statutory plan "have a protected, recognizable interest—be it one that arises from contract, trust, or otherwise—which entitles them to a percentage of revenue as set forth in" that statutory scheme. *County of Linn*, 319 Or App at 304.

As noted, plaintiff is a school district located in Clatsop County. Clatsop County is one of the Oregon counties that transferred forest land to the state pursuant to the statutory scheme described above, and it receives revenue from the state's management of that forest land. And a

portion of that revenue is transferred to plaintiff pursuant to ORS 530.115.

B. *The 2010 NWFMP*

In 2010, the Department of Forestry prepared the 2010 NWFMP, which the Board of Forestry adopted as an administrative rule. OAR 629-035-0105(1)(a). As will be explained, the 2010 NWFMP presupposes that compliance with the 2010 NWFMP will financially benefit local taxing districts, such as plaintiff. Given the centrality of the 2010 NWFMP to our analysis, we summarize its provisions below.

According to the "preface" in the 2010 NWFMP, it is a "visionary plan" aimed toward creating a forest that "produces sustainable and predictable forest products that generate jobs and revenues *for the benefit* of the state, counties, and *local taxing districts*." (Emphases added.) The preface further states that, among other goals, the 2010 NWFMP aims to "assure sustainable timber and revenue for the benefit of the Forest Trust Land Counties [*e.g.*, Clatsop County], and will also provide for the sustainable forest ecosystems and healthy watersheds that are important to Oregonians."

The first chapter of the 2010 NWFMP, among other things, sets forth its "purpose and scope." That chapter explains that the "key set of management strategies" in the 2010 NWFMP aim to, among other things, "concurrently achieve more desirable fish and wildlife habitats and improved forest biological diversity[,] and to produce revenue through harvesting of forest products."

The second chapter of the 2010 NWFMP—concerning "planning and resources"—recognizes that "timber on the northwest Oregon state forests is an asset to the counties, *local taxing districts*, and the Common School Fund." (Emphasis added.)

The third chapter of the 2010 NWFMP presents "the guiding principles, forest vision, and resource management goals" of the 2010 NWFMP. Among the "guiding principles" is that the 2010 NWFMP will "acknowledge the protected and recognizable interest of the counties from which most of the Board of Forestry Lands were originally derived."

The fourth chapter of the 2010 NWFMP "presents the resource management strategies, which are the heart of the plan." Those strategies aim to, among other things, produce "a high level of sustainable timber and revenue."

Particularly relevant in this case is the fifth chapter of the 2010 NWFMP, titled "Implementation," which "describes guidance and standards for processes and activities that will be undertaken to implement the strategies described in th[e] forest management plan." And specifically, a section in that chapter titled "Asset Management Guidelines," which recognizes that the "northwest Oregon state forests are a tangible asset of the people of Oregon, and of the counties and *local taxing districts* where the forests are located," as they provide "both an ecological and economic foundation for local communities and the northwestern Oregon region."[1] (Emphasis added.) It also highlights that "[m]aintaining and/or enhancing the value of the assets described in this plan is fundamental to maintaining the ability of these forest lands to provide for sustainable timber."

That section of chapter five—*i.e.*, "Asset Management Guidelines"—contains a bulleted list of "Guidelines for Asset Management," and provides that implementation of the 2010 NWFMP "will be consistent" with the Guidelines for Asset Management "in order to assure that the asset value of these forests is maintained or enhanced through plan implementation." Among those Guidelines for Asset Management is a bullet point—which, as explained below, the complaint alleges defendants are not in compliance with—that reads:

> "Maintain a budgeting and financial management system that assures that revenues derived from these state forest lands are sufficient to cover the department's costs of implementing this plan."[2]

_____

[1] Assets are defined in the 2010 NWFMP "as the tangible resources and infrastructure on state forest lands," including "lands," "forest products," and "fish and wildlife."

[2] We note that another Asset Management Guideline in the 2010 NWFMP is a bullet point providing, "Implement timber accountability strategies and systems designed to assure that the state and *other beneficiaries* receive anticipated revenue from the sale of timber and other products." (Emphasis added.)

Further, under a heading reading "Summary of Anticipated Outcomes from Implementing the Asset Management Guidelines," the 2010 NWFMP provides that "[i]mplementation of the plan's strategies is expected to result in significant revenue to the state, counties, and local taxing districts."

C.   *Plaintiff's Complaint*

As noted, plaintiff is a public school district located in Clatsop County. Plaintiff filed a complaint against defendants, who it alleges "manage and administer [state forests] located within Clatsop County, including the lands from which [the school district] derives revenue." The complaint alleges a single cause of action for declaratory judgment under the Uniform Declaratory Judgments Act, ORS 28.020.

In particular, plaintiff alleges that Clatsop County conveyed "substantial acres of Forest Trust Lands to the State pursuant" to the statutory scheme described above, and the 2010 NWFMP requires the State Forester to "[m]aintain a budgeting and financial management system that assures that revenues derived from these state forest lands are sufficient to cover the department's costs of implementing th[e] plan." The complaint further alleges that, notwithstanding the requirements of the 2010 NWFMP, the "policies implemented by Defendants fail to generate sufficient revenue to comply with [that] mandate, resulting in insufficient funding for Defendants' management operations—and a proportionate decrease in funding for the District."

Indeed, plaintiff alleges in its complaint that it has "received a substantial portion of its funding from the revenues generated through Defendants' management of forestlands conveyed by Clatsop County to the State," but that "Defendants have pursued policies that fail to generate the level of revenue required under Defendants' *own rules*—resulting in significant revenue shortfalls for both Defendants and the [School] District." (Emphasis in original.)

In its prayer for relief, plaintiff's complaint seeks (1) a "declaration that Defendants' policies are in contravention of the requirements of the 2010 NWFMP by failing to generate sufficient revenue 'to cover the department's costs of implementing' the management plan and that Defendants must either increase timber revenues or substantially reduce their budgets," and (2) an "injunction that requires Defendants to comply with the declaratory relief."

D.   *The Motion to Dismiss and the Trial Court's Ruling*

Defendants moved to dismiss the complaint under ORCP 21 A(1)(a), asserting that plaintiff "lacks standing to assert the claim for relief it asserts." Defendants argued, among other points, that plaintiff could not "demonstrate that the relief it requests would have any impact on it at all" because plaintiff did not "demand relief that would require an increase in revenues to taxing districts in Clatsop County or anywhere else" but instead "demands relief that would allow *either* an increase in *overall* state forest revenue *or* a decrease in the Department budget." (Emphases in original.) As defendants saw it, neither "option is likely to increase revenues to Clatsop County and its taxing districts."

The trial court agreed with defendants, reasoning that "the relief that this court could order would not necessarily provide real relief from the alleged injury" insofar as the Department of Forestry could "reduce its costs substantially, it could increase harvest levels in" areas other than Clatsop County, "or do both," and that "none of those actions would result in an increase in the timber revenue received" by plaintiff.

As the trial court saw it, "only if the [Department of Forestry] was ordered to increase harvest levels equally across its management area or specifically within the forest land that generates revenue for Plaintiff would the relief requested have a real impact on the Plaintiff, and those orders would clearly be outside the authority of this court and are not the relief requested by Plaintiff in any event."

The trial court subsequently dismissed plaintiff's complaint, and plaintiff appeals the resulting judgment.

## II.   ANALYSIS

### A.   *Legal Standard for Standing and Standard of Review*

The term "standing," as relevant here, "means the right to obtain an adjudication." *Eckles v. State of Oregon*, 306 Or 380, 383, 760 P2d 846 (1988), *appeal dismissed*, 490 US 1032, 109 S Ct 1928, 104 L Ed 2d 400 (1989) (discussing ways the legal term "standing" is used). Whether a plaintiff has standing "largely depends on the statute under which the plaintiff seeks relief." *MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 553, 383 P3d 800 (2016).

As noted, in this case, plaintiff seeks relief under the Uniform Declaratory Judgments Act. The relevant statute, ORS 28.020, provides:

> "Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

To establish standing under that statute, "a plaintiff must show that its claim meets three requirements." *ACLU of Oregon v. City of Portland*, 338 Or App 750, 768, 567 P3d 1067, *rev allowed,* 374 Or 372 (2025). First, "the plaintiff must establish that the challenged law causes some injury to or impact upon a legally recognized interest of the plaintiff's, beyond an abstract interest in the correct application or the validity of the law." *MT & M Gaming, Inc.*, 360 Or at 554 (brackets and internal quotation marks omitted). Second, the plaintiff "must show that the claimed injury or impact is real or probable, not hypothetical or speculative." *Id.* at 555. And, third, the plaintiff "must show that a decision by the court will in some sense rectify the injury, *i.e.*, that it will have a practical effect on the rights that the plaintiff is seeking to vindicate." *Id.* (internal quotation marks omitted).

In considering those requirements, as we understand it, "certainty" is not required. *See League of Oregon*

*Cities v. State of Oregon*, 334 Or 645, 649, 56 P3d 892 (2002) (plaintiffs had standing to seek to "invalidate Ballot Measure 7 (2000)," although "the consequences that plaintiffs * * * anticipate are not certain to result from the implementation of Measure 7"). Moreover, at this stage of the proceeding, the pleadings need only "bear the reasonable inference" that a decision by the court will in some sense rectify the injury. *Hinkley v. Eugene Water & Electric Board*, 189 Or App 181, 186-87, 74 P3d 1146 (2003) (the plaintiff's allegations "sufficient" where complaint alleged the defendant's "failure to follow the requirements of law in entering into * * * contracts caused [the] defendant to incur[] higher costs of operations contrary to its obligations to its ratepayers," because those allegations "bear the reasonable inference that the resultant higher costs will be passed through to ratepayers, including [the plaintiff]" (internal quotation marks omitted)). And, in "reviewing the judgment of dismissal[,] we assume the truth of all facts alleged in [plaintiff's] complaint, drawing all inferences in favor of plaintiff[]." *Id.* at 183.[3]

Further, we have said that, ultimately, "standing to challenge a statute under the Uniform Declaratory Judgments Act extends to all who allege and demonstrate a legally recognized interest affected by the statute or ordinance." *Oregon Restaurant and Lodging Assn. v. City of Bend*, 313 Or App 772, 778, 497 P3d 306 (2021).

"Whether a plaintiff has standing to bring a declaratory judgment action is a legal question, which we review for legal error." *Id.* at 777.[4]

---

[3] We note that, in the trial court, this case was decided on the pleadings, without consideration of evidence outside the pleadings. *See* ORCP 21 A(2)(b) (permitting trial court to consider evidence outside the pleadings on certain motions). Had such evidence been submitted in the trial court and considered by the trial court in ruling on defendants' motion to dismiss, we would "assume the truth of the facts alleged in the complaint to the extent that they are not contradicted by additional facts in or outside of the record." *Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 174, 349 P3d 639 (2015).

[4] We apply the same standing analysis with regard to plaintiff's request for injunctive relief. That is because the Supreme Court "has long applied essentially the same standing requirements that ordinarily apply in declaratory judgment actions" to determine a party's standing to obtain injunctive relief. *Morgan v. Sisters School District No. 6*, 353 Or 189, 201, 301 P3d 419 (2013) (noting "the same standing standards apply to plaintiff's request for declaratory and injunctive relief"). Thus, our analysis in this opinion applies equally to plaintiff's request for a declaratory judgment and to plaintiff's request for injunctive relief.

B.   *The Parties' Arguments*

On appeal, plaintiff argues the trial court erred in ruling that it did not have standing, highlighting deficiencies in the trial court's reasoning as it relates to plaintiff's standing. As to the first requirement of the standing analysis, plaintiff asserts it has a "legally recognized interest" as "the intended beneficiary of the statutory contract between Clatsop County and the State pursuant to which the [state forest lands] were established nearly a century ago and under which the lands continue to be managed" and a "legally recognized interest in the substantial revenue it receives as a school district within Clatsop County." Additionally, plaintiff contends that it has a "legally recognized interest[] in the management of the Forest Trust Land," *i.e.*, the land conveyed by Clatsop County to the state. As to the second requirement, plaintiff argues that defendants' "failure to comply with the 2010 NWFMP constitutes a concrete present injury to the School District's interests" because "it suffers a concrete injury when Defendants fail to manage those [state forests] as required by law" regardless "of whether that mismanagement causes a separate financial injury to the School District" and, in any event, defendants' "mismanagement *has* caused a substantial financial injury to the School District by reducing the revenue it has received (and will continue to receive) from the lands." (Emphasis in original.) Finally, as to the third requirement, plaintiff argues that declaring that defendants "must comply with the 2010 NWFMP would directly redress the injury to the School District's interest in the management" of state forests and that "increasing revenue across the lands managed under the 2010 NWFMP to comply with [the particular Asset Management Guideline at issue] would necessarily generate additional revenue within Clatsop County."

Defendants respond, regarding the first requirement of the standing analysis, that plaintiff "has not demonstrated that it has a sufficient interest in the correct management of state forest lands, in general, to support standing" and "to the extent plaintiff has any interest at all, that interest is limited to receipt of its statutory share of revenue from Clatsop County's distribution of state forest

revenues." Regarding the second requirement, defendants argue, among other points, that to "the extent plaintiff contends it has suffered or will suffer financial injury, that contention is speculative and hypothetical." Regarding the third requirement, defendants contend that because "counties and their taxing districts only receive revenues from timber sales within county boundaries, an overall increase in timber revenue may have no impact on the revenue to a specific county or taxing district." That is, even "if the court ordered the relief plaintiff requested—an order to increase revenue or reduc[e] costs—and the State Forest Division increased revenues overall, that order may have no impact at all on plaintiff." Further, defendants contend that, if "the Department were to decrease its management costs—which is one of the possible options under the 2010 NWFMP, as plaintiff alleged in its complaint—then it could comply with the plan without any increase in revenues to plaintiff."

Additionally, as an alternative basis to affirm, defendants assert that "the trial court did not have subject matter jurisdiction to issue a declaration usurping the Department's or the Board's discretion to manage the state forests," which is, in defendants' view, what the relief sought by plaintiff would do. That is, defendants argue, an "order to defendants to change their management of state forest lands in accordance with the court's reading of the flexible and adaptable 2010 NWFMP would usurp authority that the legislature reserved for the Board and that the Board has assumed in the structure and content of its rules."

C.  *Analysis*

Having considered the parties' arguments, we conclude that the trial court erred and that plaintiff had standing to seek declaratory and injunctive relief.[5]

As an initial matter, and concerning the first requirement, plaintiff has a financial interest in the revenue generated by the management of the state forests in Clatsop County, *see Eckles*, 306 Or at 385 (stating that "[t]he interest perhaps most often recognized as sufficient

_____

[5] In reaching our conclusion, we express no opinion on whether the statutory scheme concerning state forests created a "statutory contract" as plaintiff argues, as reaching that issue is unnecessary to our analysis.

for standing under ORS 28.020 is a present or foreseeable financial interest"), and given the provisions of the 2010 NWFMP, we think that plaintiff has a corollary financial interest in defendants' compliance with the 2010 NWFMP that is beyond "an abstract interest in the correct application" of the 2010 NWFMP, *League of Oregon Cities*, 334 Or at 658 (noting that, to establish standing under ORS 28.020, "this court has held that a plaintiff must show some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of a law").

As noted, by its own terms, the 2010 NWFMP is designed to, among other things, create a forest that "produces sustainable and predictable forest products that generate jobs and revenues *for the benefit* of the state, counties, *and local taxing districts*." (Emphases added.) And plaintiff is a taxing district, which the terms of the 2010 NWFMP are expressly designed to benefit. *See MT & M Gaming, Inc.*, 360 Or at 558 (explaining that, under Supreme Court precedent, "a plaintiff whose interests *do* fall generally within the intended objectives of the targeted statute has standing to bring a declaratory judgment act with regard to the statute" (emphasis in original)).

Plaintiff's complaint alleged that, historically, it has "received a substantial portion of its funding from the revenues generated through Defendants' management of forestlands conveyed by Clatsop County to the State," but that "Defendants have pursued policies that fail to generate the level of revenue required under Defendants' *own rules*," because defendants have failed to comply with one of the 2010 NWFMP's "Asset Management Guidelines." (Emphasis in original.) And, as noted, under a heading reading "Summary of Anticipated Outcomes from Implementing the Asset Management Guidelines," the 2010 NWFMP expressly provides that "[i]mplementation of the plan's strategies is expected to result in significant revenue to the state, counties, and *local taxing districts*" (emphasis added)—*e.g.*, school districts such as plaintiff. Further, the Asset Management Guidelines in the 2010 NWFMP—one of which plaintiff contends that defendants are not in compliance with—exist, at

least in part, to "assure that the asset value of these forests" is "maintained or enhanced through plan implementation."

Thus, we conclude that plaintiff has a financial interest in the revenue generated by the management of the state forests in Clatsop County, and because the 2010 NWFMP contemplates, among other points, that management of state forests in accordance with the 2010 NWFMP will provide "substantial revenue" to local taxing districts such as plaintiff, and is designed to benefit, among others, local taxing districts such as plaintiff, plaintiff has a corollary financial interest in defendants' implementation of the terms of the 2010 NWFMP.

Concerning the second requirement—"whether plaintiff[ has] shown that their injury or impact is real or probable, and not hypothetical or speculative," *Oregon Restaurant and Lodging Assn.*, 313 Or App at 778—as noted, plaintiff has alleged that defendants' "policies" have "fail[ed] to generate sufficient revenue" to comply with the 2010 NWFMP, which has resulted in a "decrease in funding for the District." That is sufficient to satisfy the second requirement. *See id.* 778-79 (allegation by businesses "that depend on patronage in Bend" that a "reduction in funds for tourism promotion [in Bend] would have concrete and plausible fiscal ramifications" sufficiently alleged an "injury or impact [that] is real or probable, and not hypothetical or speculative"). Particularly here, where, as discussed above, the purpose of the Asset Management Guidelines is to "assure that the asset value of [certain] forests," including forests in Clatsop County, the management of which plaintiff derives revenue from, is "maintained or enhanced through plan implementation."

Regarding the third requirement—that a plaintiff show "that a decision by the court will in some sense rectify the injury, *i.e.*, that it will have a practical effect on the rights that the plaintiff is seeking to vindicate," *id.* at 778 (internal quotation marks omitted)—we conclude that that requirement, too, is satisfied.

As noted, the provision of the 2010 NWFMP plaintiff contends defendants have failed to comply with is that

they must "[m]aintain a budgeting and financial manage-
ment system that assures that revenues derived from these
state forest lands are sufficient to cover the department's
costs of implementing this plan." Plaintiff seeks a declara-
tion and injunction requiring defendants to "either increase
timber revenues or substantially reduce their budgets."

      The trial court determined that the third require-
ment was not satisfied because "the relief that this court
could order would not necessarily provide real relief from
the alleged injury," insofar as the Department of Forestry
could "reduce its costs substantially, it could increase har-
vest levels in" areas other than Clatsop County, "or do both,"
and that "[n]one of those actions would result in an increase
in the timber revenue received" by the district.

      The difficulty with the trial court's reasoning is
twofold. First, we think that it is speculative, on this record,
that the Department of Forestry would "reduce costs sub-
stantially" or increase harvest levels in areas other than
Clatsop County to make up for any shortfall as the trial
court reasoned. And, as noted, as we understand it, the com-
plaint need not demonstrate with certainty that the relief
requested would rectify plaintiff's injury, only that there
is a reasonable inference that it would. We think such an
inference can be drawn here, given the allegations in the
complaint described above.[6]

      Second, and perhaps more fundamentally, the trial
court's ruling misses the mark because it disregards the
nature and purpose of the 2010 NWFMP itself. As detailed
above, one purpose of the 2010 NWFMP is to manage a for-
est that "produces sustainable and predictable forest prod-
ucts that generate jobs and revenues for the benefit of the
state, counties, and local taxing districts." It does so by

---

[6] Further, we note that plaintiff asserts that Clatsop County is the county
with the "second highest *** Land acreage managed under the 2010 NWFMP,"
and defendants do not contend that that is inaccurate.

   In that regard, we also note that, as we understand the statutory distribu-
tion formula and plaintiff's view of the Asset Management Guidelines, for every
$100 generated by the Department of Forestry from logging in Clatsop County
to "assure[] that revenues derived from these state forest lands are sufficient to
cover the department's costs of implementing" the plan, the state would retain
approximately $36.25 while $63.75 would go to Clatsop County.

implementing "the plan's strategies [which are] expected to result in significant revenue to the state, counties, and local taxing districts," and the "Asset Management Guidelines"—one of which plaintiff contends defendants are out of compliance with—exist "in order to assure that the asset value of these forests is maintained or enhanced through plan implementation."

Given that framework, which, as noted, presupposes that compliance with the 2010 NWFMP generally (and the Asset Management Guidelines specifically) will financially benefit local taxing districts such as plaintiff, plaintiff's allegation that defendants have failed to comply with one of the Asset Management Guidelines in the 2010 NWFMP, in our view, alleges an injury to plaintiff's financial interests that could be remedied by requiring defendants to comply with the 2010 NWFMP.

As for defendants' alternative argument—*i.e.*, that "the trial court did not have subject matter jurisdiction to issue a declaration usurping the Department's or the Board's discretion to manage the state forests," because it would "interfere" with "the discretionary power vested in an agency"—defendants rely principally on *Ashland Drilling, Inc. v. Jackson County*, 168 Or App 624, 4 P3d 748, *rev den*, 331 Or 429 (2000).

In that case, the plaintiffs sought a declaration that the Water Resources Commission had "failed to implement" a certain "program by failing to undertake specific enforcement and implementation actions." *Id.* at 629. We explained that "[c]ourts will not interfere by declaratory judgment or injunctive relief with the discretionary power vested in an agency, unless some compelling reasons exist." *Id.* at 632. We reasoned that the plaintiffs' claim failed because the relevant statute, ORS 537.780, provided only that, with regard to the particular program, the "commission '*may*' undertake particular implementation and enforcement actions," and by seeking a declaration that it did, the plaintiffs sought to have the court "override the legislature's delegation of discretion to the commission by declaring that the commission *must* undertake particular enforcement actions." *Id.* (quoting ORS 537.780 (emphases in *Ashland Drilling*)).

This case is different from *Ashland Drilling*. Here, plaintiff does not seek a declaration that would "override" an agency's exercise of discretion, as the plaintiffs did in *Ashland Drilling*, but instead seeks a declaration and injunction requiring defendants *to comply* with an administrative rule. As noted, the 2010 NWFMP provides that implementation of the 2010 NWFMP "will be consistent" (not "may" be consistent) with the Asset Management Guidelines. As plaintiff does not seek a declaration or injunction dictating how defendants exercise their discretion under the terms of the 2010 NWFMP, *Ashland Drilling* is inapposite.[7]

In sum, having considered the parties' arguments, we conclude that the trial court erred when it concluded that plaintiff lacks standing and dismissed plaintiff's complaint. Plaintiff has sufficiently alleged a financial interest in the revenue generated by the management of the state forests in Clatsop County, and given the provisions of the 2010 NWFMP, we think that it has a corollary financial interest in defendants' compliance with the 2010 NWFMP that is beyond "an abstract interest in the correct application" of the 2010 NWFMP. Plaintiff has also sufficiently alleged that the injury or impact is real or probable, and not hypothetical or speculative, and that a decision by the court will in some sense rectify the injury. Finally, the relief sought by plaintiff will not interfere with the discretionary power vested in an agency. Consequently, we reverse and remand.

Reversed and remanded.

---

[7] Regarding plaintiff's allegation that defendants are not in compliance with the Asset Management Guideline related to maintaining budgeting and financial management systems as described above, we express no opinion on what in particular that Asset Management Guideline requires defendants to do. That issue has not been briefed and is not before us. That issue can be addressed in connection with the merits of this proceeding.